WILLIAM A. FRIEDLE, Plaintiff, *v.* THE FIRST NATIONAL BANK OF THE CITY OF NEW YORK and Another, Defendants.

City Court of New York, March, 1927.

Master and servant — profit sharing agreement — action by employee to recover under agreement to pay him percentage of defendants' net profits — agreement provided that no employee should gain vested interest in fund — employee voluntarily leaving defendants' service without written consent of defendants' officers forfeited any rights under plan — plaintiff left defendants' employment without consent of officers and is not entitled to recover — plaintiff's claim that he did not assent to substituted plan requiring written consent to leave, unwarranted — evidence does not show contractual relation between parties.

Plaintiff, who sues under an agreement whereby defendant bank agreed to pay him in addition to a fixed salary a sum equal to a certain percentage of the net profits realized by the bank and the security company affiliated with it during the time which plaintiff continued to be employed, is not entitled to recover, where it appears that the agreement provided, among other things, that the fund was in the nature of a gratuity for the protection of defendants' employees and their families at the termination of the full period of employment; that no employee should gain a vested interest in the fund and that an employee voluntarily leaving the service of the bank without the written consent of the chairman and the president thereof, as did plaintiff, should forfeit any right to any benefits under said plan.

Plaintiff cannot claim that he neither worked under nor assented to the plan which was substituted for a prior plan to which he had assented, requiring any employee before leaving service to obtain the written consent of the chairman and president of the bank before he could leave the service and participate in the fund created by the plan, since it appears that subsequent to the promulgation of said substituted plan plaintiff conferred with one of defendants' officers relative to obtaining the latter's written consent to leave, and that after failing to obtain the consent voluntarily left to take a position in another bank at an increased salary.

The reservation in the prior plan that a new plan could be substituted at any time was a reasonable exercise of the power creating the gratuity fund.

Furthermore, the evidence does not substantiate any claim of any contractual relation between plaintiff and defendants with respect to this fund.

ACTION by employee to recover certain percentage of net profits of employer alleged to be due under agreement between the parties.

*David L. Klein,* for the plaintiff.

*White & Case [Joseph M. Hartfield* and *James Adam Murphy* of counsel], for the defendants.

RYAN, J.    Plaintiff sues to recover on four causes of action.    In the first cause of action plaintiff alleges that on April 22, 1918, in consideration of future services to be rendered by him to the bank,

the defendant entered into an agreement with the plaintiff whereby the bank agreed to pay and allow him, in addition to a fixed salary, a sum equal to a certain percentage of the net profits realized by both defendants during the time which plaintiff continued to be employed, and that the First National Bank agreed to deposit a percentage of its net profits with its administrative committee, which in turn would deposit the same with the defendant First Security Company, where the money was to remain to the credit of the plaintiff during the continuance of his employment and was subject to withdrawal only upon the termination of his employment, except that the plaintiff would be permitted to withdraw the interest. Plaintiff further alleges that a part of the aforesaid agreement was in writing and is made a part of his complaint. Plaintiff entered the employ of the defendant bank on April 22, 1918, and continued in its employ until June 2, 1923, but that the aforesaid plan only continued in effect until October 11, 1921. Plaintiff further states that the bank deposited with the First Security Company on December 23, 1920, $669.68 to his credit, which sum is now on deposit with said company to the credit of the plaintiff, and represents a certain percentage of the net profits of the defendants, and that the plaintiff is entitled to receive from the defendants said sum. In the second cause of action plaintiff alleges that on October 11, 1921, in consideration of the plaintiff remaining in the employ of the defendant bank, the bank entered into an agreement with the plaintiff. The bank agreed to pay to the plaintiff, in addition to a fixed salary, a sum equal to a certain percentage of the net profits realized by the bank and by the First Security Company from the business during the time which plaintiff continued to be in the employ of the bank and that a copy of said agreement is annexed to the complaint, and that the same was in full force and effect up to the termination of plaintiff's employment; that during such period of employment, and on the 23d day of January, 1922, and on the 3d day of January, 1923, the administrative committee of the defendant bank paid over to the defendant the First Security Company the sum of $1,337.75, which sum represents a certain percentage of the net profits of the defendant, and which amount the bank promised and agreed to deposit to the credit of the plaintiff in pursuance of the aforesaid agreement. Plaintiff further alleges that during his employment he withdrew from said account of deposit the sum of $334.43, representing a portion of the interest and principal, and leaving a balance in the amount of $1,003.32 and interest in the sum of $34.85, making a total of $1,038.17, which sum plaintiff claims is now due and owing to him, and that he has performed all the conditions on

his part to be performed. In the third cause of action plaintiff alleges that on April 22, 1918, in consideration of future services to be rendered by him to the defendant bank, the bank entered into an agreement with him by which it agreed to pay and allow to the plaintiff, in addition to a fixed salary, a sum equal to a certain percentage of the net profits realized by the defendants during the period of plaintiff's employment; that the conditions, terms and covenants of said agreement were changed and modified from time to time and a copy of the written portion of the original agreement is annexed to the complaint, marked Exhibit A, and a copy of the changed agreement is also annexed to the complaint, marked Exhibit B. Plaintiff further alleges that during the period of his employment with said bank from the 22d day of April, 1918, until the 2d day of June, 1923, the aforesaid agreement was in full force and effect and that there is now on deposit with the First Security Company to the credit of the plaintiff the sum of $1,673 and $34.85 interest, making a total of $1,707.85, which said sum the bank promised and agreed to deposit to the credit of the plaintiff in pursuance of the aforesaid agreement and that said sum is now due and owing to the plaintiff. In his fourth cause of action plaintiff alleges that at divers times between the 24th day of December, 1920, and January 3, 1923, there was deposited to his credit with the defendant First Security Company various sums of money which the company agreed to repay to the plaintiff upon demand, with interest at five per cent, and that on the last-mentioned day there remained with the security company a balance undrawn of $1,707.85, which he demanded but payment of which was refused. The answer to the amended complaint admits the employment of the plaintiff between the dates mentioned and that the bank had a profit-sharing endowment plan under which certain credits were allowed to the plaintiff by the administrative committee of the plan; the credits are in the amount of those specified by the plaintiff with the exception of $34.85 interest, and the answer proceeds to deny that there was any agreement to pay the plaintiff absolutely a portion of the profits. And in a separate defense it is alleged that under the plan the credits were temporary and that the employee leaving the bank without the written consent of the chairman and president of the defendant bank was not entitled to his share of the fund; that the money has been paid over to the administrative committee and that the committee, if any one, is liable and that the defendant promulgated plan No. 3 on May 8, 1923, and the plaintiff failed to obtain the written consent of the president and chairman as therein required. Prior to the employment of plaintiff the bank adopted what may be referred to as

plan No. 1, which plan provided that it shall continue in force during the pleasure of the board and that it shall be administered by the continuing committee, but that at a certain time during the year ten per cent of the net profits of the bank and company for that year in excess of $6,000,000 were to be paid to the committee, the fund being designated as an endowment fund, the principal of the fund being intended as a provision in the nature of an endowment or insurance and could only be withdrawn upon the termination of the employment of the employee. This plan continued in effect until October 11, 1921, and under it the plaintiff was credited with $669.68. On or about October 11, 1921, plan No. 1 was discontinued and what may be called plan No. 2 was substituted therefor. This plan provided among other things that it was designed to encourage efficiency, industry and loyalty on the part of the employees of the bank by giving them a participation in its prosperity. It provided for an annual endowment fund consisting of moneys like in plan No. 1 and was to be administered by a continuing committee, the decision of which committee was to be final upon all questions appertaining to the plan, and its benefactors designated to be the officers and employees in the continuous employment of the bank for more than two years preceding December thirty-first of any year and who in the judgment of the committee contributed to the prosperity of the business. The fund is designated to be a provision in the nature of an insurance or endowment and the principal may be withdrawn only upon the termination of the employment, but the interest might be withdrawn when permitted by the administrative committee. And by section 7 it was provided that no employee shall have an absolutely vested interest in the fund, and that if an employee shall voluntarily leave the services of the bank without the consent and approval of the chairman or president of the bank he shall lose all right to benefits under the plan. It was further provided that all sums heretofore temporarily credited employees leaving the service or discharged and forfeited shall be added to the balance in the funds for the employees remaining with the bank. The 8th paragraph of the plan provided that it may be rescinded in whole or in part or amended or modified at any time by the board of directors. On May 8, 1923, while plaintiff was still an employee of the defendant bank, the board of directors repealed plan No. 2 and adopted and promulgated a new plan which may be referred to as No. 3, under which the plaintiff continued his employment. The opening paragraph of plan No. 3 stated its purpose to be " to encourage education, permanency and qualification for future usefulness and promotion, to augment their efficiency,

industry and loyalty by giving them [the employees] a participation in the prosperity of the bank." It further states that in view of the fair compensation paid employees and generous cash additions as afforded by section 6 of the plan, it is understood that the benefits of the plan are not to be subject to withdrawal during the continuance of employment, but are in the nature of a gratuity for the protection of the employees and their families at the termination of the full period of employment; that no employee shall gain a vested interest, and that an employee voluntarily leaving the services of the bank without the written consent of the chairman and the president shall forfeit any right to any benefits in said plan. This last-mentioned plan differed from plan No. 2 in that any employee desiring to leave the service of the bank was required to obtain the written consent of the chairman and the president of the bank. It is not denied that the promulgation of plan No. 3 was brought to the attention of the employees on or a few days after May 8, 1923, and the plaintiff continued in the service of the bank until June 2, 1923, and received his salary for that period when he voluntarily left to take a position in another bank at an increased salary. He sets up the claim that he neither worked under nor assented to plan No. 3. There does not seem to me to be much merit in the claim of the plaintiff that he did not work under the plan referred to as No. 3, because as a matter of fact he testified it was two or three weeks after May eighth when he first went to see Mr. Reynolds about obtaining the latter's written consent to leave the service of the bank. Furthermore, in his testimony he stated as his reason for desiring to leave that he had had a position offered him with another bank at an increased salary of $500 a year. As a matter of fact he did quit his service with defendant bank and accepted the position above referred to (and in which other bank he was at the time of the trial employed). There is no doubt but that plaintiff subscribed to the several plans, including plan No. 3, by continuing in the bank's employ for the period stated after the last named plan was promulgated. The reservation in plan No. 2 that a new plan could be substituted at any time was a reasonable exercise of the power creating the gratuity fund. That plaintiff voluntarily left the service of the bank on June 2, 1923, without first obtaining the signatures of the president and chairman consenting to his leaving as required by plan No. 3, is not denied, and where the right to the fund is not a vested one but contingent, depending upon a condition precedent set up by those creating the fund in question, which under all the circumstances they had a right to make, whether the refusal of those officers to give their written consent was arbitrary or otherwise is not involved

here.   Plaintiff in his brief makes point of claiming a vested right in the moneys deposited to his credit while plan No. 1 was in force by the mere fact that his employment has terminated.   It may well be that plaintiff would have been entitled to receive the amount paid over and deposited on his behalf and to his credit with the defendant First Security Company on or about December 23, 1920, had he terminated his employment subsequent to that date and prior to October 11, 1921, when the substituted plan (No. 2) was adopted, because up to that date as the plaintiff himself pleads the first plan was in full force and effect.   But continuing in the employ of the defendant bank after plan No. 2 was adopted and promulgated as a substitute for said original plan without any special reservation, we must conclude that the substitute plan was received by the plaintiff in lieu of the original plan and accepted by him as such.   There cannot be any doubt but that the substituted plan of October 11, 1921, so far as its terms were inconsistent with the original plan, rescinded the latter, and at that time became and continued to be the plan under which the annual endowment fund was to be administered until a new, or in this case, the third plan was adopted and promulgated.   (3 Williston Cont. 3145; *McCreery* v. *Day*, 119 N. Y. 1.)   If this be so, and the original plan was thereby rescinded as hereinabove indicated, then no right of recovery remained to the plaintiff thereunder.   " Substituted " in its ordinary sense and well-known meaning is something placed in a position previously occupied by another thing.   Plaintiff in no way contributed to the fund.   It was a gratuity voluntarily created by the defendant bank by setting aside a certain portion of its profits belonging to its shareholders for the benefit of its employees and to be enjoyed by them pursuant to the terms of the plans adopted.   No contractual relation can be spelled out between the plaintiff and the defendants with respect to this fund, the reason for which having been previously stated; and after a careful reading of the very comprehensive and lengthy memoranda submitted by both sides, a reading of the exhibits, the pleadings and the plaintiff's testimony, I am convinced that plaintiff under the circumstances as presented is not entitled to recover.   It seems to me obvious that plaintiff was bound by the plan of May 8, 1923, requiring the written consent of the two officers named before he could leave the bank and participate in the fund in question; and this conclusion is strengthened by the fact that plaintiff's own testimony clearly shows that he considered such as a necessary condition when he made application therefor and it was refused. The very principle involved in this case was decided by Mr. Justice WAGNER in the case of *Higgins* v. *First National Bank* (N. Y. L. J.

April 16, 1926, and affirmed by the Appellate Division in a decision handed down February 25, 1927, 219 App. Div. 782); *Mc Nevin* v. *Solvay Process Co.* (167 N. Y. 530); *Dolge* v. *Dolge* (70 App. Div. 517); *Burgess* v. *First National Bank of New York* (Special Term, Westchester Co., April, 1926, memorandum by TAYLOR, J.*). In view of the conclusions arrived at in this opinion defendants' motions to set aside the special verdict of the jury and to dismiss the complaint and to direct a verdict for the defendants should be granted.