COMMERCIAL NATIONAL BANK, Appellant, *v.* NATIONAL
SURETY COMPANY et al., Respondents.

(Argued March 25, 1932; decided May 10, 1932.)

*Arthur W. Clement* and *Henry J. Bogatko* for appellant.
The plaintiff as pledgee for value of the original shares

was entitled to the additional shares as a dividend. (*Brightson* v. *Claflin*, 225 N. Y. 469; *First Nat. Bank* v. *Exchange Nat. Bank*, 226 N. Y. 633; *Wetsel* v. *Forgey*, 20 S. W. Rep. [2d] 523; *Equitable Trust Co.* v. *Prentice*, 250 N. Y. 1; *Gibbons* v. *Mahon*, 136 U. S. 559; Pers. Prop. Law, §§ 162–185; *Turnbull* v. *Longacre Bank*, 249 N. Y. 159; *Hale* v. *West Porto Rico Sugar Co.*, 200 App. Div. 577; *Travis* v. *Knox Terpezone Co.*, 215 N. Y. 259; *Lockwood* v. *U. S. Steel Corp.*, 209 N. Y. 375.)

*William Dean Embree* and *A. Donald MacKinnon* for respondents. The plaintiff settled and adjusted its claims to the certificate of stock by entering into the agreement of October 28, 1920, and that agreement did not include, and none of the parties intended it to include, stock or cash dividends paid on the certificates of stock. (*President Suspender Co.* v. *MacWilliam*, 238 Fed. Rep. 159; *Gans* v. *Ætna Life Ins. Co.*, 214 N. Y. 326; *Corbett* v. *Winston Elkhorn Coal Co.*, 296 Fed. Rep. 577; *Schweinburg* v. *Altman*, 145 App. Div. 377; 207 N. Y. 681; *Fairbanks* v. *Merchants Nat. Bank*, 22 N. E. Rep. 524.) The plaintiff did not become a trustee for the other parties to the agreement and is without legal capacity to maintain the action. (*Brown* v. *Spohr*, 180 N. Y. 201; *Matter of Bogan*, 129 Misc. Rep. 119.) Aside from the agreement of settlement the plaintiff had no such title to the certificate for the Reynolds stock as against the owners of record, as to entitle plaintiff to dividends. (*Brisbane* v. *Delaware R. R. Co.*, 94 N. Y. 204; *Wilson* v. *Tuttle*, 2 N. Y. 443; *Warner* v. *Fourth Nat. Bank*, 115 N. Y. 251; *Matter of Hallenbeck*, 231 N. Y. 409; 6 Thompson on Corporations, §§ 4247, 4248; *Travis* v. *Knox Terpezone Co.*, 215 N. Y., 259; *Turnbull* v. *Longacre Bank*, 249 N. Y. 159; *State Bank* v. *Syndicate Co.*, 178 Fed. Rep. 359.)

HUBBS, J. The sole question involved in this case is whether the plaintiff, a national bank acting as trustee, is entitled to recover the value of a stock dividend issued

upon fifty shares of the common stock of the R. J. Reynolds Tobacco Company.

The solution of that question requires an examination of the facts involved in the transactions between the parties.

In November, 1919, plaintiff loaned $50,000 to N. S. Bowles, and received as collateral security certificates of stock in a number of different corporations. The certificates had been indorsed in blank by the various owners· from whom they had been stolen. Some of the owners were insured by the National Surety Company; others by London Lloyd. The insurance companies paid the loss to the various owners of the stock and became subrogated to their rights. They notified the different companies which had issued the stock of the loss of the certificates and also notified the transfer agents. Bowles, who had obtained the loan from the plaintiff by means of the fraudulent use of the stock certificates, did not pay the loan.

Among the stock certificates secured by the plaintiff from Bowles was one for fifty shares of class B, common stock, of the R. J. Reynolds Tobacco Company. The plaintiff on February 19th, 1920, notified the Reynolds Company and its transfer agent, the Equitable Trust Company, that it held the same and·was entitled to the dividends thereon. The certificate had been issued to Bamberger Brothers who owned it at the time it was lost or stolen. Bamberger Brothers was insured by the National Surety Company, defendant. It and the other insurance companies interested commenced replevin actions against plaintiff to recover possession of the shares of stock which it had received as collateral from Bowles. During the pendency of those actions, the plaintiff was unable to have the stock transferred to its name.

The plaintiff, in making the loan to Bowles, acted in good faith and without notice of any claim of third parties to any of the stock taken by it as collateral. It was,

therefore, an innocent pledgee holder for value and entitled to dividends issued on the stock which it held.

Negotiations were carried on by the attorneys for the various parties to the replevin actions for the purpose of reaching some kind of an adjustment. During those negotiations, a valuation was made of the different shares of stock. They were valued at $68,000 at the market price. The fifty shares of Reynolds stock was valued at $23,000. On October 28th, 1920, an arrangement was entered into between the plaintiff and attorneys for the insurance companies by which it was agreed that the stock should be sold at auction; that if it was sold for less than $50,000 it should be bid in by the plaintiff and resold by it on the market. From the sum received, less expenses, the plaintiff should retain $44,000 and pay over the balance to the other parties to the agreement.

The record owners of the stocks withdrew the notices to the transfer agents and the stocks were transferred to an officer of the plaintiff bank after the auction sale. The stocks were sold at public auction to the plaintiff for $43,250, which was appropriated by it. The principal reason why the stocks sold for less than expected under the original valuation was that the Reynolds Tobacco Company had reduced the par value of its class B, common stock, from $100 to $25 and declared a stock dividend of 200 per cent. Two hundred shares of the $25 common stock were issued to plaintiff in place of the 50 shares of old $100 par common, and the stock dividend of 400 shares of new $25 par common was issued to Bamberger Brothers, the record owner of the original 50 shares.

The market value of the new stock was about $39 per share, while the market value of the old stock was, when valued during the negotiations, $460 per share. The effect was that the value of the 200 shares of $25 par value stock received by plaintiff in exchange for the 50 shares of old $100 par value stock was about $15,000 less than the 50 shares had been figured at.

On October 28, 1920, when the agreement was entered into between the attorneys for the various parties, none of them knew that the Reynolds Company had declared a stock dividend. Nothing is said in the agreement about dividends on the stock. The plaintiff did not know about the stock dividend until after it had bid in the stock at the public auction.

It is clear that when the agreement of October 28th was entered into, the attorneys who entered into it for their clients had in mind the stocks actually pledged to plaintiff which included the 50 shares of class B, common stock of $100 par value issued by the Reynolds Tobacco Company, which had been valued during the negotiations at $460 a share, or $23,000 for the 50 shares. They had no knowledge that the value of the stock had been reduced by a 200 per cent stock dividend. Because of the fall in the market of stocks and the issue of the stock dividend by the Reynolds Company, the stock sold for $43,250 instead of $63,000, the value at which they had been appraised during the negotiations. Instead of the insurance companies realizing $19,000 from the sale, the plaintiff failed to receive the full sum of $44,000 which it was entitled to under the agreement.

When the plaintiff was informed after the auction sale of the stock dividend which had been declared by the Reynolds Company and that such dividend of 400 shares had been issued to Bamberger Brothers, the holder of record, it demanded such stock dividend by letter dated November 16, 1920, and the demand was refused.

The position of the plaintiff is that under the terms of the agreement, it became a trustee and that as trustee it is entitled to receive the stock dividend. We believe it is right in such contention. At the date of the agreement it held the stocks as a *bona fide* pledgee for value. The equity therein over and above its claim, if any, belonged to the insurance companies as assignees of the record owners. By the agreement it waived all of its

claim over $44,000 and agreed to bid in the stock if it sold for less than $50,000, to resell it and divide the proceeds over and above the $44,000 due it. Such agreement placed upon plaintiff the duty to exercise the care and obligations of a trustee and made it responsible to the other parties to the agreement for the faithful performance of such duties. It could not give away a part of the securities or permit the former record holder of the Reynolds stock to appropriate the stock dividend without taking action to protect its rights as trustee for the benefit of the other parties to the agreement.

The contention of the defendants is that plaintiff's rights as pledgee have been abrogated by the agreement of October 28th. Concededly, the plaintiff was pledgee of the stock for a valuable consideration without notice under a *bona fide* transaction. The defendants attempted to deprive the plaintiff of the stock by the replevin actions. While the litigation was pending, the parties reached an agreement by which the plaintiff waived its interest to all sums above $44,000. It did not, however, give up its rights as a *bona fide* pledgee. The trial court found as a fact that it sold the stocks at auction under its power of attorney from Bowles, *i. e.*, as pledgee. Assuming that the owner in whose name the stock stood upon the books of the company was the proper party to whom the Reynolds Company should issue the stock dividend, nevertheless, when the defendant, Bamberger Brothers, received the dividend it held it subject to the rights of the pledgee. In addition to the rights which the plaintiff held as a *bona fide* pledgee, it assumed additional obligations under the agreement of October 28th, which were not inconsistent with its rights as pledgee, except in so far as it waived the right to receive any sum above $44,000.

The plaintiff was entitled to the dividends as pledgee under section 162 of the Personal Property Law (Cons. Laws, ch. 41), being the Uniform Stock Transfer Act. (*Turnbull* v. *Longacre Bank*, 249 N. Y. 159.) When

Bamberger Brothers accepted the stock dividend it knew that plaintiff held the stock as pledgee. The Reynolds Tobacco Company and the Equitable Trust Company also had that information.

The whole transaction assumes that the plaintiff was entitled to hold the fifty shares of $100 par value stock as security as against all parties. The value of the stock which plaintiff held as pledgee could not be diluted by the issue of a stock dividend which had that effect, after notice of the facts and without plaintiff's consent. The defendants contend that by failing to insist on the cash and stock dividends on other stocks which it held as pledgee, plaintiff waived its rights and placed a practical construction on the agreement. Plaintiff might waive its rights as to other dividends without affecting its rights as to this one. It might have felt that as it had abundant security with the fifty shares of Reynolds stock of a par value of $100 selling for $460 a share, it was not interested in the other dividends. It does not appear that any of those dividends were paid after the agreement of October 28th, and prior to that time it was not obligated to the other parties to collect such dividends.

The defendants also contend that by the agreement plaintiff waived its rights. We do not agree with such contention. The agreement does not provide for payment to plaintiff in the event that the stocks should sell for less than $44,000. If they had sold for $30,000 plaintiff would have been vitally interested to secure for itself the stock dividend. The agreement does not purport to deprive it of such right. The agreement being silent, the plaintiff may insist on its rights as pledgee to the dividend. It cannot be presumed that plaintiff intended to give up its clear legal rights as pledgee of the stock in the absence of language in the agreement fairly susceptible to such construction. True, when it receives the dividend it will receive it in trust for all above the balance of $782 due it under the agreement.

It is earnestly urged that the plaintiff on account of a

letter written by its general counsel to the attorney for the National Surety Company, dated December 6th, 1920, has placed a construction upon the agreement of October 28th which justified the finding of fact to the effect that the plaintiff was not acting as trustee and that its only interest was to collect its $44,000. That letter must be read in connection with its letter of November 16th to the same party, where it specifically demanded the 400 shares stock dividend which had been issued to Bamberger Brothers. The letter of December 6th wherein it demanded the sum of $782 to make up the $44,000 claimed to be due it under the agreement of October 28th, and gives a statement of the account which shows that balance due related solely to its claim of $44,000, does not in any way indicate that it waives its demand made in the letter of November 16th or intimate that it was not acting as trustee.

On January 17th, 1921, and before the National Surety Company had answered its letter of December 6th, 1920, it wrote all parties in interest, setting forth its claim to the stock dividend. Its letter of December 6th could not, therefore, have estopped the plaintiff, and when read in connection with the letter of November 16th, 1920, and in view of all the other circumstances, does not afford evidence to sustain the finding of the trial court, which is, therefore, entirely without evidence to sustain it.

Plaintiff was not required to rescind the agreement when it ascertained that Bamberger Brothers had appropriated the stock dividend. That information was not received by plaintiff until after the stock had been sold at auction and bid in by it. Meanwhile the market price of the stock was going down.

The plaintiff as trustee is entitled to the stock dividend. The Reynolds Company issued the stock with full notice of plaintiff's claim. The Equitable Trust Company, as transfer agent, delivered the stock to Bamberger Brothers

with like notice and Bamberger Brothers with notice appropriated the stock and refused to surrender it after demand.

The judgments should be reversed and judgment directed in favor of the plaintiff against the defendants for $11,886 and interest thereon from December 2, 1920, with costs in all courts.

KELLOGG, J. (concurring). I concur in the result reached by Judge HUBBS, on the following grounds: The plaintiff was the pledgee of a fractional interest in the capital stock of the Reynolds Company, evidenced by a certificate for fifty shares. The precise interest of the plaintiff was then determinable by a fraction having the figure 50 as the numerator and a figure representing the total issue of stock as the denominator. This fraction was not altered, nor was the quantum or intrinsic value of the plaintiff's interest affected in the slightest degree by the declaration and distribution to stockholders of a stock dividend. " Upon the distribution of a stock dividend, ownership of the assets is precisely as it was." (Per CARDOZO, Ch. J., in *Equitable Trust Co.* v. *Prentice*, 250 N. Y. 1, 12.) When the Reynolds stock became the subject of an agreement between the parties, none of whom were aware that a stock dividend had been declared, necessarily it was the stock interest of the plaintiff, as indicated by the fraction referred to, not as represented by the incorrect tokens of the old certificate and the new capital issue, which was involved. When this interest was sold and bid in by the plaintiff, it necessarily became the absolute owner, for itself and others, of the same fractional interest. It was, therefore, entitled to the certificate for the additional shares, since their possession was necessary to indicate the precise interest held by it.

POUND, Ch. J., CRANE, LEHMAN and CROUCH, JJ., concur with HUBBS, J.; KELLOGG, J., concurs in result in separate opinion; O'BRIEN, J., not sitting.

Judgment accordingly.