In the Matter of the Estate of DELOS W. COOKE, Deceased.

Surrogate's Court, Westchester County, April 25, 1933.

*Herman Goldman* [*Edward J. Schoenbrod* of counsel], for the administrators c. t. a.

*Upham & Sanderson* [*John H. Phelan* of counsel], for Walter P. Chrysler, claimant.

*Shearman & Sterling* [*E. Lacy Finnan* of counsel], for the Chemical Bank and Trust Company, claimant.

*Larkin, Rathbone & Perry*, for the Central Hanover Bank and Trust Company, claimant.

*Simeon A. Steeves*, claimant in person.

SLATER, S.  This accounting proceeding shows that the decedent was indebted in large amounts to many persons and institutions. It further appears from the account of proceedings that the decedent had received from Walter P. Chrysler certain securities which he used as collateral to bolster up his personal obligations.  Since decedent's death certain of his pledgees have sold his own and the stock of other persons hypothecated by him to pay his indebtedness. However, some securities remain in their hands to be turned over to the owners of such.  The Chemical Bank and Trust Company, a creditor, files objections to the account, alleging that the objectant is entitled by law to have its claim allowed and paid without any deduction on account of any such property which it may hold as collateral security therefor; and further, that the accounting party should not be entitled to apply, in reduction of the amount of said claim, the value of any property which it may hold on the ground that it is entitled by law to have its claim allowed and paid without any deduction on account of any such property which it may hold as collateral security therefor; and objects further that petitioners have failed to charge themselves with certain securities.

Walter P. Chrysler objects because the accounting party fails to recognize his claim for 470 shares of the common stock of the Chrysler Corporation now held by the Marine Midland Trust Company as custodian.

It is stipulated by and between Walter P. Chrysler, the Chemical Bank and Trust Company, and the accounting parties with regard to the facts affecting their intent: That, on November 12, 1929, Walter P. Chrysler delivered to the decedent 5,000 shares of the stock of the Chrysler Corporation, and on November 14, 1929, he likewise delivered another 5,000 shares of the stock of the Chrysler Corporation; that said certificates of stock so delivered were registered and stood on the books of the said Chrysler Corporation in the name of J. H. Bache & Co. and were all duly indorsed in blank

for transfer; that, notwithstanding such record ownership, all of the aforesaid certificates of stock belonged to said Chrysler, the said J. H. Bache & Co. being the nominee of said Chrysler; that the delivery of said certificates of stock was made gratuitously by said Chrysler for the sole purpose of enabling the said decedent to support his credit in connection with loans made to him by certain named financial institutions; that it was agreed between the decedent and said Chrysler at the time of their delivery that said certificates of stock would be pledged by the decedent as collateral to secure further the loans made to the decedent by said institutions; it was understood between the decedent and said Chrysler that such certificates of stock would be returned to Chrysler as soon as either (1) the decedent's own collateral had risen in value sufficiently to secure said loans, or (2) sooner, upon demand of said Chrysler; that, in order to establish a certain amount of loss or gain for income tax purposes, said Chrysler, with the knowledge of decedent, *substituted* for the certificates other certificates for a like number of shares, thus repossessing himself with said original certificates; that such *substituted* certificates which were then owned by said Chrysler were registered in the name of Shippee & Rawson, and indorsed in blank for transfer by them, they being the nominees of said Chrysler; that four certificates for 100 shares each of Chrysler Corporation stock are now held by the Marine Midland Bank and Trust Company, subject to the conflicting claims of the administrators herein and said Chrysler; and that another 70 shares of Chrysler Corporation stock are now held by said Marine Midland Bank and Trust Company, and likewise subject to said conflicting claims, making in all 470 shares so held subject to said claims.

There is a further stipulation between said Chrysler and the accounting parties hereto to the effect that on November 12, 1929, said Chrysler delivered to decedent 5,000 shares of the capital stock of the Chrysler Corporation, and on November 14, 1929, he delivered to decedent an additional 5,000 shares; that the conditions under which said 10,000 shares of stock were delivered by Chrysler to decedent were set forth in the first above-mentioned stipulation between the parties hereto and the Chemical Bank and Trust Company; that no demand was made by Chrysler upon decedent during his lifetime; that the first demand for the return of said stock was made on October 1, 1931, by letter of that date addressed to the administrators of the decedent; that on said date said Chrysler for the first time notified the various banks in which said stock had been pledged by the decedent with the consent of said Chrysler, of his interest in said stock; that none of said shares of stock have been returned to Chrysler; that the loss or damage to Chrysler by

reason of the failure of decedent to return to him said shares of stock is established at the rate of $12.50 per share, being the value per share of the stock at the close of the New York Stock Exchange on October 1, 1931, the date of his first demand for the return thereof.

There was offered in evidence a receipt signed by Delos W. Cooke, dated November 12, 1929, addressed to Mr. Chrysler. It acknowledged receipt of 5,000 shares of Chrysler Corporation stock, named the numbers of the certificates and said: " I agree to return upon demand by you."

Under date of November 14, 1929, Delos W. Cooke, by J. J. Peppard, one of his present administrators, addressed Mr. Chrysler and acknowledged receipt of another 5,000 shares of said stock, and said: " I agree to return upon demand by you."

By letter dated November 14, 1929, Mr. Cooke personally acknowledged the receipt of 5,000 shares of said Chrysler stock, giving the certificate numbers.

These acknowledgments related to the first 10,000 shares of the Chrysler stock. No letter was written by Cooke with regard to the substituted stock.

By letter dated October 1, 1931, eight months after Cooke's death, Mr. Chrysler addressed the administrators of the decedent and demanded the return of said 10,000 shares of Chrysler Corporation capital stock, in which he said that he had " notified all the banks with which I understand Mr. Cooke has deposited my stock, that the stock is my property and not his."

It is claimed by the Chemical Bank and Trust Company that the 470 shares of stock of the Chrysler Corporation now held by the Marine Midland Bank and Trust Company is owned by the Cooke estate and should participate as an asset in paying the claims of the estate. Mr. Chrysler contends that the stock is his. So, the issue is clean-cut.

The decedent died February 10, 1931, and it developed that he was insolvent. The loans which he obtained from the banks could not be paid and the banks thereupon sold part or all of the collateral pledged against the loans to satisfy them. The Marine Midland Bank and Trust Company has completely satisfied decedent's loan from the collateral pledged and now, as shown by the account, holds over and above the amount of the loan 470 shares of Chrysler Corporation stock delivered to decedent by claimant, and which claimant now contends belongs to him and should be forthwith returned to him.

Let it be said at the outset that said 10,000 shares of Chrysler Corporation stock, except the 470 shares, have either been sold by

pledgees to pay Cooke's debts or are being held by pledgees to secure loans which are now undermargined.

The said Marine Midland Bank and Trust Company holds said shares of stock pending the determination of the question whether the stock should be returned to Mr. Chrysler, or should be considered part of the assets of the estate for the satisfaction of creditors generally.

The stock in the instant case is a chose in action. (*First National Bank* v. *Maine*, [1932] 284. U. S. 312, 327.) Stock certificates are designed to circulate freely in the channels of commerce. Elements of negotiability of certificates of corporate stock lacking at common law have been supplied by the Personal Property Law. The Legislature has declared the public policy of the State with respect to the transfer of stock certificates. (*Pierpoint* v. *Hoyt*, 260 N. Y. 26.) Title to a certificate may be transferred by delivery of the certificate indorsed in blank (§ 162) and such delivery is effectual, except as provided in section 168, though made by one having no right of possession and having no authority of the owner of the certificate or from the person purporting to transfer the title. (*Turnbull* v. *Longacre Bank*, 249 N. Y. 159, 164.)

Here the stipulation is to the effect that the bank as pledgee was the holder for value and without notice of any facts making the transfer wrongful. The bank acquired title to the certificates as pledgee and the certificates may be reclaimed only by payment of the debt for which they are security.

On such facts, the true owner is estopped from denying the lien acquired by the pledgee, provided they acted in good faith and without notice of any limitation upon the authority of the pledgor. (*McNeil* v. *Tenth National Bank*, 46 N. Y. 325; *Union Trust Co.* v. *Oliver*, 214 id. 517, 523, 524; *Union Bank* v. *United States Exchange Bank*, 143 App. Div. 128.)

The stock was in the hands of the decedent for a prescribed purpose, *i. e.*, to be used by him to bolster up his indebtedness at the bank. The relation between the decedent and the bank was that of pledgor and pledgee. The bank acted in good faith in receiving the stock as collateral and became an innocent pledgee and holder for value. The equity therein over and above its claim, if any, belonged to the owner of the stock. (*Commercial Nat. Bank* v. *National Surety Co.*, 259 N. Y. 181, 184; *Nicholson* v. *Morgan*, 119 Misc. 309.)

The bank has been paid and is not appearing in the instant case, except as custodian of unsold collateral security. The bank's claim has been satisfied and the court has to decide between the

rights of the creditors of the decedent as against the claimed right of Chrysler, the bailor.

After the payment of the principal debt, the pledgee retains the collateral, subject to all the equities existing between the original parties without regard to any question of notice. (49 C. J. 1027, § 312; *Barber* v. *General Automotive Corporation*, 240 Ill. App. 85.)

There was one legal relationship existing between Cooke, the pledgor, and the bank, the pledgee, which in law amply protects the innocent pledgee for value. Another relationship existed between Chrysler, the owner of the stock, and Cooke, the gratuitous bailee. Other elements intervene where the rights of innocent third parties are not involved.

It is contended that as to the *substituted* stock the letters from Cooke and J. J. Peppard to Chrysler do not apply; that by such substitution a new situation was created much in favor of the creditor's claim.

The word " substitution " means " to put in place of another thing;" " serves in lieu of another;" " having some of its parts replaced." The word is a synonym for " change of one thing for another."

" Substituted " in its ordinary sense and well-known meaning is something placed in a position previously occupied by another thing. (*Friedle* v. *First National Bank of New York*, 129 Misc. 309, 314; *Matter of Evans*, 234 N. Y. 42.)

Unless new terms are used or the circumstances attending the substitution to the contrary, such substituted stock will have all the incidents, conditions and limitations attached to the original loan of stock.

The contention is unsound in morals and law. Chrysler did not part with his title to the second lot of stock; the terms applying to the first lot of stock loaned affected the substituted shares. It was all one transaction.

Between Cooke and Chrysler the acts and intention are the essential constituents of a delivery of the stock. (*Grannis* v. *Stevens*, 216 N. Y. 583, 587.) The memorandum evidences of estoppel given by Cooke to Chrysler pervade the transaction and attach themselves to the second lot of stock. It is borne out by the circumstances. Memoranda are found adequate to lead to the creation of a trust, and in such a case equity will grant relief. " Unjust enrichment " moves the court. (*Sinclair* v. *Purdy*, 235 N. Y. 245.) The argument is made that the second lot of stock was intended as a gift. The court, as the trier of the fact, draws another inference. The transaction is found " instinct with an obligation " to return the stock. Let the estate of Cooke keep

faith. As to this stock, Cooke was bailee or trustee. (*Shawmut Corp.* v. *Bobrich Sales Corp.*, 260 N. Y. 499, 505.)

The creditors are not purchasers as defined in sections 156, 168 and 183 of the Personal Property Law. The creditors stand only in the shoes and take the right of the bailee — no more, no less.

The possession of the stock by the bailee for the limited purpose and the legitimate object set forth in the receipts signed by the bailee destroys any semblance of estoppel against Chrysler. Possession *per se* is not estoppel. (*People's Trust Co.* v. *Smith*, 215 N. Y. 488; *Utica Trust & Deposit Co.* v. *Decker*, 244 id. 340, 348, 350; *Murphy* v. *Gucker*, 245 id. 648.)

As between Chrysler and Cooke, the relationship was always that of bailor and bailee, or trustee. No title passed to Cooke. (Richardson's " Outlines of Bailment & Carriers," p. 23.) No creditor of Cooke's can demand that his estate be augmented by the wrongful conversion of the property of another, or by its application to the general estate of the decedent, because it never rightfully belonged to the decedent. The presumption that certificates of stock were bought and paid for out of the decedent's own funds because he had possession of them and the right to deal with them as his own is overcome by the receipts given by Cooke creating an estoppel against him. (*Gorman* v. *Littlefield*, 229 U. S. 19, 25.)

An estoppel rests upon the word or deed of one party upon which another rightfully relies, and, so relying, changes his position to his injury. (*Metropolitan Life Ins. Co.* v. *Childs Co.*, 230 N. Y. 285, 292; *Com'l C. Corp.* v. *Northern Westchester Bank*, 256 id. 482, 489.) The doctrine of estoppel has been carried to its greatest length in *Alleghany Col.* v. *Nat. Chautauqua Co. Bank* (246 N. Y. 369). The promise to return the securities, the first and second lot, was part of the whole transaction and was linked up with the beneficiary trust. Cooke, his representatives, and his creditors are precluded from disputing the ownership by Chrysler.

One who furnishes security for specified liabilities of another does not by so doing make what he puts up as security the property of the debtor, or subject to all of the latter's liabilities. Neither is such property subject to be applied for the bailee's, or trustee's liabilities to other purpose. (*Walker* v. *Wilkinson*, 3 F. [2d] 867, 871.) *Robinson* v. *Roe* (233 Fed. 936 [C. C. A. 2d C.], Henry G. Ward, C. J.) is somewhat analogous to the present case. The court held that the securities were not loaned absolutely and unconditionally for all purposes, but for the specific purpose of being hypothecated in bank loans to aid the borrower in his difficulties; that the title remained in the true owner.

The decedent became a gratuitous bailee or trustee for a specific

purpose and such purpose is identified by the evidence and stipulation in the instant case. After the purpose has been fulfilled, the property should be returned to the true owner. (*Sattler* v. *Hallock*, 160 N. Y. 291, 298.)

If the beneficiary, if living, did not return the unsold stock in the hands of the pledgee, he would be guilty of violating the trust imposed for his benefit. Can it be argued that the bailee's executors, administrators or creditors are in any better or stronger position? I think not. (*Siegel* v. *Spear & Co.*, 234 N. Y. 479.)

The owner of personal property who permits another to appear as owner of it is not estopped to assert ownership as against judgment creditors of the latter, since a judgment creditor can never become an innocent purchaser of property, but takes only the title of his judgment debtor, and if the judgment debtor has no title, he takes none. (21 C. J. 1179, § 181; *Hartford* v. *Stout*, 102 Wash. 241; 172 Pac. 1168.) (See 49 C. J. 986, § 223; *People's Trust Co.* v. *Smith, supra.*)

The bailee holds as a trustee for the bailor. The bailor may follow the stocks in the hands of the bailee's executors, administrators or creditors affected with the knowledge of the facts, and the trust will attach to such securities so far as they are concerned. Such securities cannot be used for the payment of the debts of the bailee, whether the bailee is alive or dead, since the very nature of the original transaction implies notice to the bailee, his representatives and his creditors. It would be a breach of trust for the bailee or those claiming under him to claim otherwise. (*Pierpoint* v. *Farnum*, 234 App. Div. 205.) The transfer was not absolute. Chrysler retained the right to demand the stock and Cooke must return it to him on such demand. To hold that Chrysler is excluded from receiving his own property would admit to confiscation of his property without due process of law. Here we deal with property, title to which never vested in Cooke so far as Chrysler is concerned.

Upon the facts, I hold that Walter P. Chrysler is the owner of the 470 shares of stock of the Chrysler Corporation now in the hands of the Marine Midland Bank and Trust Company, ready to be turned over, and that such property is free from any claim of the decedent's estate or of any creditor of the decedent.

The administrators of the estate admit the validity of the indebtedness due the Chemical Bank and Trust Company, but they claim that the estate is entitled to have the value of the collateral held to secure said debt applied to or deducted from the bank's claim before determining the amount for which the estate is responsible, while the bank claims that it is entitled to have its claim paid by the estate on the basis of the full amount due.

Secured creditors are entitled to have their claims allowed against the debtor or his estate for the full amount due, and to receive payment thereon without regard to the value of the security held as collateral therefor. (*McGrath* v. *Carnegie Trust Co.*, 221 N. Y. 92, 95; *Hoppenstedt* v. *Amy*, 174 N. Y. Supp. 742; *Matter of Kearns*, 139 Misc. 877, 879, and cases cited.)

I hold that each secured creditor is entitled to a *pro rata* distribution based on the full amount of his claim as it existed on the date of decedent's death.

Submit decree in accordance with these views, with notice to all appearing attorneys.