**EL PASO NATURAL GAS CO., Petitioner,**

v.

**MINCO OIL & GAS, INC., and Charles F. Doornbos as Trustee for the Charles F. Doornbos Revocable Trust, Respondents.**

No. 98–0478.

Supreme Court of Texas.

Argued Dec. 10, 1998.

Decided Nov. 18, 1999.

Rehearing Overruled Jan. 27, 2000.

---

**43.** 4 S.W.3d at 901.

**44.** Tex.R. Civ. P. 3a(2).

■■■

Alene Ross Levy, Lynne Liberato, Kent Rutter, Michael K. Swan, James Cowan, S. Shawn Stephens, Houston, for Petitioner.

John Smithee, Joe W. Hayes, Amarillo, for Respondents.

Justice ENOCH delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice HECHT, Justice BAKER, Justice ABBOTT, Justice O'NEILL, and Justice GONZALES joined.

This is an appeal from a judgment awarding respondents Minco Oil & Gas, Inc. and Charles F. Doornbos as Trustee for the Charles F. Doornbos Revocable Trust damages for breach of gas purchase agreements against petitioner, El Paso Natural Gas Company. As to Minco, the principal issue is whether the Uniform Commercial Code's good faith obligations apply to its final release of its agreement with El Paso. We conclude that the UCC[1] does not impose a duty of good faith upon the formation or procurement of a final release of liability. Thus, we hold that Minco's release is enforceable and releases El Paso from its take-or-pay obligations to Minco. Regarding Doornbos, the issue is whether El Paso waived error thus limiting the court of appeals' authority to render judgment for El Paso on the enforcement of Doornbos's release. Because we conclude El Paso did not waive error, we reach the question and conclude that Doornbos's release is enforceable and releases El Paso from its take-or-pay obligations to Doornbos. Accordingly, we reverse the court of appeals' judgment and render judgment for El Paso.

1. TEX. BUS. & COM.CODE §§ 1.101 *et seq.*

## BACKGROUND

In 1979, Minco and Doornbos entered into separate agreements with El Paso containing identical "take-or-pay" clauses. The agreements' take-or-pay provisions required El Paso to purchase a stated minimum quantity of gas or pay Minco and Doornbos the difference between the quantity actually taken and the stated minimum quantity. Due to the mid–1980's sharp decline in natural gas prices and demand, El Paso determined that it was unprofitable to continue purchasing gas under the agreements' take-or-pay requirements. To mitigate its losses, El Paso executed with Minco and Doornbos various amendments to the agreements that reduced El Paso's take-or-pay obligations and granted El Paso the right to unilaterally reduce the price it paid for gas. In addition, the parties executed over eighty other contracts ("monthly releases") that: (1) released El Paso from its monthly take-or-pay obligation; (2) allowed Minco and Doornbos to sell their gas on the spot market during the relevant time period; and (3) allowed El Paso the option either to reduce its annual take-or-pay obligation by the amount of gas Minco and Doornbos sold on the spot market or to disregard El Paso's obligation for the month covered by the contract.

In 1988, Minco requested and received from El Paso a final termination of its agreement and a mutual release of liabilities ("Minco termination letter"). Under this termination letter, El Paso and Minco released each other "from any and all claims, causes of action or liability that may have existed concerning the Agreement."

In 1991, El Paso decided to terminate its relationship with Doornbos and sent Doornbos and his predecessors-in-interest form letters that the parties signed agreeing to waive "[a]ll past liabilities that might exist between the parties."

In 1992, Minco and Doornbos sued El Paso under the 1979 agreements' take-or-pay provisions. Minco and Doornbos argued that the releases were invalid, alleging that El Paso obtained the Minco and Doornbos amendatory agreements, monthly release letters, and termination letters unconscionably and in bad faith. El Paso responded that the parties had mutually released all claims through the Minco and Doornbos amendatory agreements, monthly release letters, and termination letters.

In a preliminary ruling, the trial court granted partial summary judgment for Minco and Doornbos, holding that the amendatory agreements, the monthly releases, and the Minco and Doornbos final termination letters were all unconscionable as a matter of law. In a bench trial on the remaining issues, the trial court not only reaffirmed its earlier ruling, but also concluded that El Paso procured the amendatory agreements, monthly releases, and the Minco termination letter in bad faith. But the trial court did not make a bad faith determination concerning the Doornbos termination letter. In any event, the court declined to enforce any of the releases and ordered El Paso to pay Minco and Doornbos damages under the agreements' take-or-pay provisions.

The court of appeals reversed the trial court's finding of unconscionability as to all the agreements.[2] The court, however, agreed with the trial court's finding that El Paso procured the Minco final termination letter in bad faith and affirmed the judgment for Minco. Because unconscionability was the only ground upon which the trial court relied to void the Doornbos termination letter, the court of appeals concluded the release was valid and rendered judgment that Doornbos take nothing.[3]

On rehearing, the court of appeals concluded that El Paso had not properly preserved error on its defense that the Doornbos termination letter operated as a release. The court reasoned that because the trial court, in its findings of fact and conclusions of law, found the Doornbos termination letter to be ambiguous and expressly refused to rule upon whether the termination letter was a release, El Paso had the burden to show on appeal that it had raised the issue that the document was a release as a matter of law. But because El Paso failed to challenge the court's refusal to hold the letter a release, El Paso waived error on whether the document effectuated a release. The court thus concluded that it was without authority to now find the document was a release.[4] The court of appeals then considered whether the amendatory agreements and monthly releases were valid to determine if the Doornbos Agreement's take-or-pay provision was enforceable. In its analysis, the court considered whether El Paso had a duty to act in good faith in obtaining the amendatory agreements and monthly releases, and if so, whether El Paso had in fact breached the duty. The court of appeals, agreeing with the trial court, concluded that UCC section 1.203 imposed a duty on El Paso to act in good faith in procuring the amendatory agreements and monthly releases. The court then concluded that El Paso procured the amendatory agreements and monthly releases in bad faith and, therefore, held them unenforceable. Thus, on rehearing, the court of appeals also affirmed the trial court's judgment for Doornbos.

### MINCO—DUTY OF GOOD FAITH

Because the issue of whether one has a duty to act in good faith is a question of law, our review is *de novo*.[5] The general rule is that, absent a special relation-

---

**2.** *See* 964 S.W.2d 54, 66. Minco and Doornbos do not challenge the court of appeals' unconscionability holding in this Court.

**3.** *See id.*

**4.** *See id.* at 72–73.

**5.** *Barber v. Colorado I.S.D.,* 901 S.W.2d 447, 450 (Tex.1995).

ship, there is no duty between parties to a contract to act in good faith.[6] Here, the parties do not contend that a common law duty of good faith exists. Rather, they disagree over whether the UCC's statutory duty of good faith and fair dealing in the performance, enforcement and modification of a commercial contract applies to a final release of liability.[7]

Minco asserts that the UCC's duty to act in good faith applies to all the parties' agreements, including the final termination letter. Specifically, Minco contends that El Paso violated the UCC's good faith duty of "honesty in fact in the conduct or transaction concerned."[8] It further asserts that both UCC section 1.203's requirement that "[e]very contract or duty within this title imposes an obligation of good faith in its performance or enforcement" and UCC section 2.209's requirement that modifications meet the test of good faith impose a duty of good faith to all the parties' agreements, including the release.

El Paso, by contrast, contends that the court of appeals erred by applying the UCC's obligation of good faith to the formation or procurement of the final release. El Paso asserts that the UCC's duty of good faith applies to the "enforcement and performance" of contracts, including "modifications" of those contracts, but does not apply to the "formation" of contracts. Thus, El Paso reasons that because a final release of liability constitutes neither the "enforcement and performance" of a contract for sale of goods nor a "modification"

of an agreement, but rather is the "formation" of a separate contract releasing the parties' obligations to each other, the UCC's duty of good faith does not apply. We agree.

■ Buying and selling oil and gas pursuant to take-or-pay gas purchase agreements is a transaction involving "goods" within the meaning of the UCC's good faith provisions.[9] Accordingly, El Paso has a statutory obligation to act in good faith in the performance, enforcement and modification of these agreements.[10] But that does not mean that El Paso is under a statutory good faith obligation when it procures or forms those contracts.

■ The court of appeals concluded that the good faith obligation in sections 1.203 and 2.209, as defined in section 2.103, imposed a duty of good faith in procuring the final termination letter on El Paso. True, section 1.203 states that "[e]very contract or duty within this title imposes an obligation of good faith in its performance or enforcement."[11] And section 2.103 further defines "good faith" in the case of a merchant as "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade."[12] But this duty of good faith does not extend to the formation of a contract.[13] And that includes releases because releases are contracts.[14] Indeed, a final release is a contract by which the parties agree that there are no longer any duties to perform or

6. *See Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 697 (Tex.1994).

7. *See* TEX. BUS. & COM.CODE §§ 1.203, 2.209.

8. *Id.* § 1.201(19).

9. *See* TEX. BUS. & COM.CODE §§ 2.102, 2.107; *see also Lenape Resources Corp. v. Tennessee Gas Pipeline Co.*, 925 S.W.2d 565, 577 (Tex.1996) (Phillips, C.J., concurring and dissenting).

10. *See* TEX. BUS. & COM.CODE §§ 1.203, 2.209 cmt. 2.

11. *Id.* § 1.203.

12. *Id.* § 2.103; *see also* TEX. BUS. & COM.CODE § 1.201(19) (generally defining "good faith" as honesty in fact in the conduct or transaction concerned).

13. *See Tolbert v. First Nat'l Bank of Oregon*, 312 Or. 485, 823 P.2d 965, 969 (1991) ("Although every contract imposes upon each a duty of good faith and fair dealing in its performance and its enforcement, that duty does not to extend to formation of the contract.") (citations omitted).

14. *See Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 178 (Tex.1997).

enforce under the original contract.[15] And it acts as a voluntary settlement of the claims relating to each party's performance or non-performance of the original contract. Because section 1.203 applies to the performance and enforcement of an existing contract and not forming or procuring a contract, including a mutual release of liability, section 1.203 imposes no good faith duty on El Paso.

 Similarly, section 2.209 does not impose a duty of good faith on forming a final release. Subsection 2.209(a) states that "[a]n agreement modifying a contract within this chapter needs no consideration to be binding."[16] The court of appeals concluded that this subsection imposes a duty of good faith upon seeking a release.[17] Referring to section 2.209 comment 2, the court of appeals held that the UCC's good faith "duties apply not only to the performance of the contract but also to the *formation* and modification of those agreements."[18] But comment 2 does not mention forming an agreement; it refers only to modifications. The comment states that modifications made under subsection 2.209(a):

> [m]ust meet the test of good faith imposed by this Act. The effective use of bad faith to escape performance on the original contract terms is barred, and the extortion of a "modification" without legitimate commercial reason is ineffective as a violation of the duty of good faith.[19]

It further states that:

> [t]he test of "good faith" between merchants or as against merchants includes

"observance of reasonable commercial standards of fair dealing in the trade" (Section 2–103), and may in some situations require an objectively demonstrable reason for seeking a modification.[20]

Neither section 2.209 nor the comments refer to a duty of good faith in the formation of a contract. Rather, the express language of section 2.209(a) and the comments establish that this subsection's duty of good faith applies only to contract "modifications." And as discussed above, a release of liability is not an agreement to modify a contract but is an agreement to completely relinquish the parties' performance obligations to each other.

This is not to say that there are no constraints on a party's behavior in the negotiation and formation of a contract. The UCC's doctrine of unconscionability, for example, is intended to apply to the formation of contracts.[21] Further, subsections 2.209(b) and (d) apply to any "modification or rescission" of a contract.[22] But subsection 2.209(a) and corresponding comment 2's good faith obligation are limited to "modifications" only.[23]

Because the court of appeals' only basis for holding the Minco final termination letter unenforceable was its bad faith determination, and because we conclude that the UCC does not impose a good faith obligation on the formation of a final release, the Minco termination letter releases El Paso from the Agreement's take-or-pay obligations. We therefore reverse the court of appeals' judgment as to Minco and render judgment that Minco take nothing.

---

15. *See* BLACK'S LAW DICTIONARY 1289 (7th ed.1999) (defining release as "liberation from an obligation, duty, or demand; the act of giving up a right or claim to the person against whom it could have been enforced.").

16. TEX. BUS. & COM.CODE § 2.209(a).

17. 964 S.W.2d at 67.

18. *Id.* (emphasis added).

19. TEX. BUS. & COM.CODE § 2.209 cmt. 2.

20. *Id.*

21. *See* TEX. BUS. & COM.CODE § 2.302. ("If the court as a matter of law finds the contract ... to have been unconscionable at the time it was made the court may refuse to enforce the contract....").

22. *See* TEX. BUS. & COM.CODE § 2.209(b), (d).

23. *See id.* § 2.209(d) cmt.2.

### DOORNBOS

■ As to Doornbos, the trial court did not make a bad faith determination, but only held that the release was unconscionable and therefore unenforceable. Unique to Doornbos, the trial court found the termination letter to be ambiguous, but assumed that it was not, in order to reach the unconscionability issue. The only issue before us is whether the court of appeals properly determined that El Paso waived the release issue by failing to object to the trial court's finding of ambiguity.

Initially, the court of appeals reversed that part of the trial court's judgment holding the release unconscionable and awarding Doornbos damages and attorney's fees, and rendered judgment for El Paso.[24] In doing so, the court of appeals concluded that the trial court improperly found that the Doornbos release was ambiguous, and that the terms of the release unambiguously encompassed any take-or-pay liabilities.[25] But on rehearing, the court of appeals concluded that it had "wrongly raised and resolved the factual question of whether the [Doornbos termination letter] was a release."[26] The court reasoned that because the trial court refused to rule on whether the termination letter was a release, it was El Paso's burden to come forward with a challenge on appeal establishing that the document was a release as a matter of law. In short the court of appeals held that El Paso waived the issue. We disagree.

■ Whether or not a contract is ambiguous is a question of law for the court.[27] Accordingly, when the court of appeals held in its original opinion that the termination letter was an unambiguous release, it resolved a legal issue. And the court of appeals erred in concluding on rehearing that El Paso had to affirmatively challenge on appeal the trial court's finding of ambiguity. Furthermore, the legal issue of ambiguity was subsumed under El Paso's principal complaint that the release was not unconscionable, but rather should be enforced as written to bar Doornbos's claims.

In this case, the trial court made a factual finding of ambiguity. The finding arose out of a summary judgment proceeding. After hearing arguments, the trial court issued an "Order Finding Unconscionability as a Matter of Law," in which it held unenforceable the various amendments, modifications and releases, including the Doornbos termination letter. Although ostensibly rendered as a partial summary judgment, the court filed findings of fact and conclusions of law in support of its order and there mentioned that the Doornbos final termination letter was ambiguous. The trial judge stated:

> the Court *finds an ambiguity* in the "Agreements to Terminate Contracts" regarding the phrase, "All past liabilities that might exist between the parties are waived." The Court *makes no ruling herein as to whether such language is sufficient to operate as a release of past take-or-pay damages.* However, since El Paso takes the position that the language was intended to release past take-or-pay liabilities, the Court finds that the effect of such a release of past take-or-pay damages without any corresponding benefit to Plaintiffs would be so one-sided as to constitute the "substantive abuse" described in *Wade v. Austin* at the time of its execution. (emphasis added).

Thus the court did not resolve the ambiguity because it also determined that the agreement's operation as a release was unconscionable. Regardless, such a finding cannot form an alternative basis for its

---

24. *See* 964 S.W.2d at 71.

25. *See id.* at 66.

26. 964 S.W.2d at 72.

27. *See National Union Fire Ins. Co. v. CBI Indus. Inc.,* 907 S.W.2d 517, 520 (Tex.1995).

judgment. In fact, the finding is immaterial to the court's final judgment.

First, to decide as the trial court did, that the Doornbos termination letter was unconscionable and therefore void, it necessarily decided that the release did exactly what it purported to do—release El Paso. That is to say, by concluding that the termination letter was unconscionable, the court necessarily assumed that the agreement operated to release El Paso's take-or-pay obligations and thereby impliedly resolved the supposed ambiguity in El Paso's favor. A release that may not actually be a release because it is ambiguous cannot be said to be unconscionable as a matter of law. Thus the trial court's controlling conclusion of unconscionability rendered the ambiguity finding unnecessary to its judgment. As such, El Paso's failure to specifically challenge it did not constitute a waiver.[28]

 Further, we liberally construe issues presented to obtain a just, fair, and equitable adjudication of the rights of the litigants.[29] In the court of appeals, El Paso argued that "the evidence does not support a finding of unconscionability. Had the trial court properly enforced the amendments and releases, [Doornbos's] claims would be barred." Liberally construing this argument to avoid waiver, we conclude that El Paso preserved its complaint that the trial court erred in failing to enforce the releases.[30]

### Conclusion

As a matter of law, the UCC does not impose a good faith obligation upon the formation of a final release. Thus, Minco's termination letter is enforceable and releases El Paso from the Minco agreement's take-or-pay obligations. Because El Paso did not waive its complaint that

the Doornbos termination letter is also enforceable, we conclude that El Paso is also released from the Doornbos agreement's take-or-pay obligations. Consequently, we reverse the court of appeals' judgment and render judgment that Minco and Doornbos take nothing.

Justice OWEN and Justice HANKINSON did not participate in the decision.

---

**28.** *See* Tex.R.App. P. 44.1(a)(1).

**29.** *See Consolidated Engineering Co. v. Southern Steel Co.,* 699 S.W.2d 188, 192 (Tex.1985) (holding that issue was adequately preserved when issues "are so inextricably entwined

that one cannot be mentioned without automatically directing attention to the other.").

**30.** *See Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989); *Ginther v. Taub,* 675 S.W.2d 724, 728 (Tex.1984).