In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00076-CV
______________________________


DALLAS HARRIS, INDIVIDUALLY AND AS
INDEPENDENT EXECUTOR OF THE ESTATE OF
BEVERLY HINES HARRIS, DECEASED, Appellant
 
V.
 
LIBBY HINES, INDIVIDUALLY AND AS EXECUTRIX OF
THE ESTATE OF RODNEY HINES, DECEASED, AND
BEBE HINES COLE, AS TRUSTEE FOR
CY RICKEY HINES, Appellees


                                              

On Appeal from the County Court at Law
Harrison County, Texas
Trial Court No. 2001-5510–CCL


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          This case involves construction of the last will and testament of Beverly Hines
Harris. The question in this appeal is whether a devise by Beverly of real and personal
property was adeemed because she did not own the property at her death. The trial court
found it was not adeemed. We reverse and render judgment that the property was
adeemed. 
Factual and Procedural Background
          Beverly and Richard N. Cole were partners in a marina, restaurant, and motel called
Shady Glade Camp (Shady Glade). Richard was married to Beverly's daughter, Bebe. A
dispute arose between Beverly and Richard over the operation of Shady Glade, and a
lawsuit ensued. A settlement of the lawsuit resulted in the purchase of Richard's interest
in Shady Glade by Beverly's husband, Dallas Harris. Beverly's last will and a "Stipulation
of Ownership" between Beverly and Dallas were prepared at the same time the lawsuit was
settled. Beverly's will provided for the disposition of Shady Glade as follows:
          I will, devise and bequeath all my interest in all that certain real and
personal property located near Caddo Lake in northeastern Harrison County,
and commonly known as Shady Glade (being the same property described
in that certain Stipulation of Ownership executed by Dallas Harris and myself
on October 21st, 1994, and recorded under Clerk's File # 10094-H in the
Offices of the County Clerk for Harrison County, Texas) together with all
additions thereto and substitutions therefor, to my son, Rodney Carroll Hines,
and the Trustees of any trust created under this Will for the benefit of my
son, Cy Rickey Hines, equally. 
 
          I specifically exclude my daughter, Bebe Ann Hines Cole from this
bequest due to the difficulties I have previously experienced with her
husband, Richard N. Cole, and because I am satisfied that she has adequate
means to ensure her future support and well-being. Under no circumstances
do I wish Richard N. Cole to have any interest in or control over Shady Glade
at any time, now or in the future.
 
          Beverly's will provided for the disposition of all her remaining property in a residuary
clause as follows:
          If my husband, Dallas Harris, survives me, then I will, devise and
bequeath all the rest and residue of my property of every kind and character
and wherever situated, to the Trustee hereinafter named, in trust, . . . .
 
          During the life of my husband, Dallas Harris, the Trustee shall pay the
net income from the trust to my husband in convenient payments no less
often than quarterly. . . .
 
          Upon the death of my husband, the trust shall terminate and the
principal of the trust as it is then constituted, and any accumulated and
undistributed net income, shall be delivered to and shall vest as follows:
 
          A. One-third (1/3) to my daughter, Bebe Ann Hines Cole;
          B. One-third (1/3) to my son, Rodney Carroll Hines; and 
          B. [sic] One-third (1/3) to the [sic] Rodney Carroll Hines and Bebe
Ann Hines Cole, as Co-Trustees, in trust for the benefit of my son, Cy Rickey
Hines, . . . . 
          The "Stipulation of Ownership" referred to in Beverly's will recited that Beverly and
Dallas each purchased a one-half interest in Shady Glade with separate property, and that
each owned an undivided one-half interest in Shady Glade, both real and personal
property, as their respective separate property. The "Stipulation of Ownership" described
with great detail both the real and personal property comprising Shady Glade. 
          On April 1, 1999, Beverly and Dallas sold their interests in Shady Glade to a third
party in exchange for a promissory note of $150,000.00. Beverly died March 29, 2001. 
She was survived by her husband, Dallas, her daughter, Bebe, and her two sons, Rodney
and Cy Rickey. At the time of her death, the promissory note remained owing in the
amount of $138,000.00. After Beverly died, her son Rodney also died, leaving his wife,
Libby Hines, as executor of his estate. 
          Dallas, as executor of Beverly's estate, filed a petition in court requesting a
declaration that the bequest of the Shady Glade property under Beverly's will was
adeemed and could no longer be fulfilled. Libby, as executor of Rodney's estate, filed an
answer and counterclaim requesting the trial court to declare that Beverly's devise of
Shady Glade also provided for the proceeds from its sale, and that the promissory note
given in exchange for Shady Glade was proceeds of the specific bequest and should not
be adeemed. Both parties moved for summary judgment.


 The trial court found that
Beverly's devise of Shady Glade to her two sons was not ambiguous and was not
adeemed. The trial court granted to Libby, and to Bebe, as trustee for Cy Rickey, an equal
portion of Beverly's remaining one-half interest in the promissory note. The trial court
denied Dallas' motion for summary judgment. 
Standard of Review
          The movant for traditional summary judgment must establish that there is no
genuine issue of material fact and that the movant is entitled to summary judgment as a
matter of law. See Tex. R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546,
548 (Tex. 1985). In determining whether there is a disputed material fact issue precluding
summary judgment, all admissible evidence favorable to the nonmovant will be taken as
true; every reasonable inference must be indulged in favor of the nonmovant, and any
doubts resolved in the nonmovant's favor. Nixon, 690 S.W.2d at 548–49. When both
sides move for summary judgment and the trial court grants one motion and denies the
other, the reviewing court should review both parties' summary judgment evidence and
determine all questions presented. Dow Chem. Co. v. Bright, 89 S.W.3d 602, 605 (Tex.
2002). The reviewing court should render the judgment the trial court should have
rendered. Id. 
          Libby contends the standard of review of a trial court's determination that a will is
unambiguous is reviewed under an abuse of discretion standard. See Nail v. Thompson,
806 S.W.2d 599, 601–02 (Tex. App.—Fort Worth 1991, no writ). It is uncontroverted,
however, that the determination of whether an instrument such as a will is ambiguous is
a question of law. See Kelley-Coppedge, Inc. v. Highlands Ins. Co., 980 S.W.2d 462, 464
(Tex. 1998); Sammons v. Elder, 940 S.W.2d 276, 280 (Tex. App.—Waco 1997, writ
denied). We review questions of law de novo. See generally El Paso Natural Gas Co. v.
Minco Oil & Gas, Inc., 8 S.W.3d 309, 312 (Tex. 1999); Cherokee Water Co. v. Freeman,
33 S.W.3d 349, 353 (Tex. App.—Texarkana 2000, no pet.) (whether deed is ambiguous
is question of law subject to de novo review). Therefore, we will review the trial court's
determination of whether the will is ambiguous under a de novo standard of review. In a
de novo review, no deference is accorded to the lower court's decision. Quick v. City of
Austin, 7 S.W.3d 109, 116 (Tex. 1998). 
Will Construction
          In construing a will, the court must focus on the testator's intent. San Antonio Area
Found. v. Lang, 35 S.W.3d 636, 639 (Tex. 2000). In so doing, "[t]he intent must be drawn
from the will, not the will from the intent." Id. at 640. This intent must be ascertained from
the language found within the four corners of the will. Shriner's Hosp. for Crippled Children
v. Stahl, 610 S.W.2d 147, 151 (Tex. 1980). Therefore, when the intent of the testator is
apparent on the face of the will, extrinsic evidence is not admissible to show a contrary
meaning. Kirk v. Beard, 162 Tex. 144, 345 S.W.2d 267, 273 (1961). In determining the
testator's intent, the court focuses not on what the testator intended to write, but the
meaning of the words actually used. Lang, 35 S.W.3d at 639. In this light, courts must not
redraft wills to vary or add provisions "under the guise of construction of the language of
the will" to reach a presumed intent. Stahl, 610 S.W.2d at 151. 
          If the will is unambiguous, the court should not go beyond the specific terms to
ascertain the requisite intent. Lang, 35 S.W.3d at 639. If, on the other hand, the meaning
of the instrument is uncertain or "reasonably susceptible to more than one meaning," the
instrument is ambiguous and extrinsic evidence should be considered to ascertain the
testator's intent. See Davis v. Shanks, 898 S.W.2d 285, 286 (Tex. 1995); Eckels v. Davis,
111 S.W.3d 687, 694 (Tex. App.—Fort Worth 2003, pet. denied); Myrick v. Moody, 802
S.W.2d 735, 738 (Tex. App.—Houston [14th Dist.] 1990, writ denied). Evidence of the
testator's situation, the surrounding circumstances, and like indicia which enable the court
to place itself in the shoes of the testator at the time the document was executed may be
admissible. Lang, 35 S.W.3d at 639. This is so because it may facilitate the determination
of intent at that time. See id. 
Ademption
          "[A]demption describes the extinction of a specific bequest or devise because of the
disappearance of or disposition of the subject matter given from the estate of the testator
in his lifetime." Stahl, 610 S.W.2d at 148. Unless the testator specifically provides
otherwise in the will, the sale or removal of a specific bequest from the estate adeems the
devise or bequest. Id. at 150. A will speaks at the time of the testator's death, and only
the estate the testator then possessed passes under the terms of the will. Id. When a
specific devise of realty is adeemed because the testator sold it before his or her death,
absent a contrary intent expressed in the will, the beneficiaries of the realty under the will
are not entitled to the sale proceeds; instead, the proceeds pass under the residuary
clause. Id. at 150–52. The doctrine of ademption applies only to specific bequests and
devises. In re Estate of Brown, 922 S.W.2d 605, 607 (Tex. App.—Texarkana 1996, no
writ). 
            A bequest or devise can be specific, general, demonstrative, or residuary. Hurt v.
Smith, 744 S.W.2d 1, 4 (Tex. 1987). A devise or bequest is specific if it is described in the
will with such particularity that the property is distinguished from all of the testator's other
property, and the testator intended for the beneficiary to receive that particular item, rather
than cash or other property from his or her general estate. Id. "No special words are
required to make a bequest specific, though such words as 'my,' 'owned by me,' 'standing
in my name,' or 'in my possession' are indicative of the specific character of the legacy." 
Pinkston v. Pinkston, 81 S.W.2d 196, 198 (Tex. Civ. App.—Eastland 1935, no writ). A
legacy is a general bequest if it bequeaths a designated quantity or value of property or
money and the testator intended for it to be satisfied out of her or his general assets rather
than disposing of, or being charged upon, any specific fund or property. Id. 
          Such classification depends on the intent of the testator as shown by the entire will. 
Hurt, 744 S.W.2d at 4. When classifying bequests in a will, we must consider the testator's
intent by looking at the entire dispositive scheme, rather than reaching an arbitrary
determination based on ritualistic classification. Id. It is necessary to determine, for each
item bequeathed in the will, whether the testator intended the property to be disposed of
as a specific asset, or merely as a portion of her or his general estate. Id. 
          A review of Beverly's entire will reveals that her clear intent was to devise Shady
Glade to her sons as a specific asset. Shady Glade is described with great particularity in
the "Stipulation of Ownership" referenced in the will. Beverly also distinguished it from all
her other property in the disposition scheme. Considering the entire will, the only item of
her property that she specifically provided for was Shady Glade. She disposed of all her
other property through the residuary clause. She also devised "all my interest . . . in Shady
Glade," reflecting the specific character of the devise. See Pinkston, 81 S.W.2d at 198. 
           In addition, the will evidences Beverly's intent for her sons to receive that particular
item, rather than cash or other property from her general estate. In her will, Beverly
excluded her daughter, Bebe, from Shady Glade "due to the difficulties I have previously
experienced with her husband, Richard N. Cole, and because I am satisfied that she has
adequate means to ensure her future support and well-being." She specifically provided
that her intention was for her two sons to receive Shady Glade. Therefore, her devise of
that property was a specific one, subject to ademption.



          Libby contends, and the trial court agreed, Beverly specifically provided for the
proceeds from the sale of Shady Glade and, therefore, the devise should not be adeemed. 
The sale or removal of a specific bequest from the estate adeems the devise or bequest,
unless the testator specifically provides otherwise in the will. Stahl, 610 S.W.2d at 150. 
Libby contends the following italicized language in Beverly's will evidences a contrary intent
to ademption:
          I will, devise and bequeath all my interest in all that certain real and
personal property located near Caddo Lake in northeastern Harrison County,
and commonly known as Shady Glade (being the same property described
in that certain Stipulation of Ownership executed by Dallas Harris and myself
on October 21st, 1994, and recorded under Clerk's File # 10094-H in the
Offices of the County Clerk for Harrison County, Texas) together with all
additions thereto and substitutions therefor, . . . . 
 
(Emphasis added.) Libby contends the phrase "together with all additions thereto and
substitutions therefor" specifically provides for the proceeds from the sale of Shady Glade. 
Dallas contends this language is ambiguous and does not specifically provide for the
disposition of the proceeds from the sale of Shady Glade, and extrinsic evidence is thus
admissible to ascertain Beverly's intent. 
          This is not the type of phrase which has a settled legal meaning, akin to "real
property" or "community or separate property." See Lang, 35 S.W.3d at 640 ("real
property" has settled legal meaning which does not include real estate liens and
promissory notes); Stewart v. Selder, 473 S.W.2d 3, 11 (Tex. 1971) (Calvert, C.J.,
concurring) (terms such as separate and community property are so clear, plain, and
unambiguous they do not allow constructions other than those "ascribed to them in law"). 
It also cannot be said that the term "substitution," as used in this devise, carries a meaning
"settled by usage and sanctioned by judicial decisions." See Davis v. Shanks, 898 S.W.2d
285, 286 (Tex. 1995) (finding word "contents" had no settled legal meaning at time of
testator's death; therefore, extrinsic evidence was admissible to show testator's intent). We
have been unable to find where any court in the United States has addressed the meaning
of a testator's reference to the "substitution" of property in this context, and whether such
reference includes the proceeds from the sale of that property. 
          Courts have analyzed decedents' wills to determine if an intent contrary to
ademption was provided. These cases, however, do not provide a clear guide in this case. 
          In Opperman v. Anderson, 782 S.W.2d 8, 9–10 (Tex. App.—San Antonio 1989, writ
denied), the deceased's will bequeathed different stocks to certain beneficiaries, "together
with all dividends, rights and benefits declared thereon at the time of my death, and all
rights and benefits thereof." The deceased sold some of the stock before death, and the
San Antonio court found the bequest was specific and adeemed the stock sold before
death. Id. at 11. The appellees interpreted "rights and benefits" to include cash proceeds
from the sale of the shares. Id. The court disagreed, finding that "rights and benefits"
included only such things as voting rights and dividends, not the proceeds from the sale
of the shares. Id.
          In Bates v. Fuller, 663 S.W.2d 512, 514 (Tex. App.—Tyler 1983, no writ), the
deceased provided that real estate owned at her death 
shall be sold by my Executor to pay all of my legally enforceable debts,
funeral expenses, all costs of my last illness, costs and expenses of the
administration of my estate, and Federal Estate Taxes, if any. After such
debts, expenses and taxes have been paid, the balance of the proceeds
remaining from the sale of my real estate, shall be divided equally among my
three children . . . .
  
The court found that the testator's overall purpose and intent was clearly to make a
bequest, under the above-quoted provisions, of the proceeds from the sale of "my real
estate" to her three daughters, after payment of certain debts and expenses. Id. at 515. 
The court went on to hold that the devise was not adeemed by such sale since the
proceeds were an identifiable part of the estate at the date of death. Id. at 516. Therefore,
in Bates, the intent to provide for the proceeds from the sale of the property was
specifically provided for in the devise. See also In re Estate of Dublin, 101 A.2d 731 (Pa.
1954) (finding where devise of specific real estate described property as "under agreement
of sale" was not adeemed by predeath sale of real estate); In re Estate of Frost, 47 A.2d
219 (Pa. 1946) (finding testamentary gift of "proceeds" of General Motors stock did not
adeem specific bequest from predeath sale of stock). This is not the situation in this case. 
          Words of common use are given their plain and ordinary meaning unless it appears
from the context they were used in a different sense. Stahl, 610 S.W.2d at 152; Vinson
v. Brown, 80 S.W.3d 221, 231 (Tex. App.—Austin 2002, no pet.). We must, therefore,
determine whether the plain, ordinary meaning of "together with all additions thereto and
substitutions therefor" showed an intention by Beverly to provide for the proceeds from the
sale of Shady Glade under the specific devise. 
          "Substitution" is defined as "the act, process, or result of substituting one thing for
another." Merriam-Webster's Collegiate Dictionary 1174 (10th ed. 1993). The word
"substitution" has also been defined to mean "to put in place of another thing"; "serves in
lieu of another"; "having some of its parts replaced." In re Estate of Cooke, 264 N.Y.S. 336
(N.Y. Sur. Ct. 1933). The word is a synonym for "change of one thing for another." Id. 
"Substituted," in its ordinary sense and well-known meaning, is something placed in a
position previously occupied by another thing. Id. "Therefor" is defined to mean "for or in
return for that." Merriam-Webster's Collegiate Dictionary 1223.


 
          We find that the devise is reasonably susceptible to more than one meaning and
that the instrument is, therefore, ambiguous. The phrase "together with all additions
thereto and substitutions therefor" does not provide a clear indication of whether Beverly
intended to include the proceeds from the possible future sale of Shady Glade in the
devise to her two sons. In addition, the stated intent included in the devise does not
indicate whether she intended to exclude Richard from only the business operations and
management of the business, or whether she intended to also exclude him from all
possible future benefits of the business, including proceeds from its sale.  
          On one hand, the provision providing for the "substitution" of Shady Glade could be
interpreted to provide for any substitute for Shady Glade, the entity, including the complete
substitution of the business for money or a promissory note. The devise for all the real and
personal property of Shady Glade, "together with all additions thereto and substitutions
therefor" could include anything added to Shady Glade or put in the place of or exchanged
for Shady Glade, the business. This language appears broad enough to encompass any
substitute for Shady Glade, including proceeds from its sale.  
          This language, however, could also be construed to include only the additions or
substitutions to the real or personal property that comprised Shady Glade, but not the
proceeds from the sale of that property. The description of Shady Glade in the "Stipulation
of Ownership" provides a detailed description of the real property, along with a list of all the
personal property, down to the appliances. Dallas contends the devise was of this
specifically articulated property, and only additions to and substitutions for that specific
property were intended, not the proceeds from its sale. Dallas also points out that, since
Beverly meticulously described in the "Stipulation of Ownership" all the property, both real
and personal, she was devising to her two sons, she would have also provided for the
proceeds from its sale with the same specificity in her will, had it been her intent to include
such proceeds in her devise.
          In addition, the paragraph setting out Beverly's intent in devising Shady Glade to her
sons does not demonstrate a clear indication of whether Beverly intended to provide for
the proceeds from the sale of Shady Glade. The devise includes the following paragraph,
evidencing Beverly's intent in making the devise: 
          I specifically exclude my daughter, Bebe Ann Hines Cole from this
bequest due to the difficulties I have previously experienced with her
husband, Richard N. Cole, and because I am satisfied that she has adequate
means to ensure her future support and well-being. Under no circumstances
do I wish Richard N. Cole to have any interest in or control over Shady Glade
at any time, now or in the future. 
Beverly's stated intent in devising Shady Glade was to ensure that Richard had no interest
in or control over Shady Glade, "now or in the future," under any circumstances. Again,
this provision is reasonably susceptible to more than one meaning. This paragraph could
be construed to mean Beverly intended to exclude her daughter from the devise to ensure
that her husband, Richard, could receive no possible benefits from the business at all,
including any proceeds from its sale. It is evident, however, from Beverly's devise of one
third of her residuary estate to Bebe, that she did not intend to exclude Richard from any
possible participation in the benefits of her estate. On the other hand, the language under
consideration could be construed to mean she intended to exclude her daughter and
Richard only from the management or operations of Shady Glade as a business. 
          In a similar circumstance, the court in Sammons, 940 S.W.2d at 280–81,
determined that a term in a will was capable of more than one meaning and extrinsic
evidence was admissible to determine the testator's intent. The appellant complained the
term "savings account and/or savings certificate" in a devise was not ambiguous. Id. at
280. The court first looked to the dictionary definition of the words used. Id. at 281. The
court concluded that, in light of the lack of caselaw and the broad dictionary definition, the
term was ambiguous in the context of the will and extrinsic evidence was admissible. Id.
          Likewise, in this case, the dictionary definition of "substitutions" is broad and there
is a complete absence of caselaw on whether proceeds is a substitute for a specific devise
of real and personal property. The term "substitution" in the context of Beverly's will
reasonably conveyed more than one meaning. 
          An ambiguity can either be classified as a latent or patent ambiguity. A patent
ambiguity is one apparent on the face of the will. Brown, 922 S.W.2d at 608. It arises on
the reading of the will from the words themselves. Id. A latent ambiguity exists when the
will appears to convey a sensible meaning on its face, but it cannot be carried out without
further clarification. Id. at 608–09. In the past, extrinsic evidence was admissible only to
explain a latent ambiguity, but not to explain a patent ambiguity. Id. at 609. The modern
rule, however, admits extrinsic evidence to show the testator's intent, whether the
ambiguity is latent or patent. Id.
          We conclude the ambiguity in this case is patent. The devise of Shady Glade sets
up a conflict from the words themselves. It is not clear from the devise whether Beverly
intended to provide for the proceeds of Shady Glade. We conclude the will contains a
patent ambiguity, and we will look to extrinsic evidence to determine Beverly's intent.


 
Summary Judgment Evidence
          When both sides move for summary judgment and the trial court grants one motion
and denies the other, the reviewing court should review both parties' summary judgment
evidence and determine all questions presented. Bright, 89 S.W.3d at 605. The reviewing
court should render the judgment the trial court should have rendered. Id.
           The extrinsic evidence in this case conclusively establishes Beverly's intent. The
extrinsic evidence consists of two affidavits attached to Dallas' amended motion for
summary judgment. The first affidavit is his and states Beverly executed her will and the
"Stipulation of Ownership" at the time of the settlement of the lawsuit with Richard. Dallas
states that he was present during the discussions regarding the preparation of Beverly's
will and that her intention was
to make sure that Richard Cole had no voice in the management of Shady
Glade Camp, . . . . Since I was putting my money into the business and
becoming a partner with her, my wife and I both wanted to make sure there
would be no management problems with Mr. Cole in the event that my wife
died before me. . . . I understood that my wife did not intend to make an [sic]
permanent unequal division of her entire estate, but she wanted specifically
to exclude Richard Cole from any voice in the management of Shady Glade
Camp; . . . . 
 
          J. Rodney Gilstrap, Beverly's attorney involved in the litigation with Richard Cole and
who drafted the "Stipulation of Ownership" and Beverly's will, also submitted an affidavit. 
In that affidavit, he also outlines Beverly's intentions in devising Shady Glade.
Because of the business management problems with Mr. Cole, Mrs. Harris
was adamant that Mr. Cole never have any involvement with the business. 
 
          There was no discussion ever with Mr. or Mrs. Harris about the
possibility of selling Shady Glade Camp. . . . 
 
          In describing the Shady Glade Camp business, I was very specific in
including all the real estate owned by the business on or near Caddo Lake,
and went on to specifically include all the personal property owned by the
business. I incorporated into the will by reference the Stipulation of
Ownership executed at the same time by Mr. and Mrs. Harris, which lists all
the real and personal property owned by the business. The Stipulation of
Ownership lists the canoe, the boats, the equipment, appliances, furnishing,
furniture, supplies, linens, and other items owned by the business. In
preparing Mrs. Harris' will, I stipulated that the bequest of Shady Glade
Camp included not only those items, but "all additions thereto and
substitutions therefor." It was my intent and understanding that this phrase
would refer to any of the items of personal property which were acquired by
the business after the making of the will, whether they were new items or
items purchased to replace a lost or worn-out article. It was not my intent to
suggest that the entire business might be sold and a note taken for the sale
would be considered a "substitute" for the business. Although I never asked
that specific question of Mrs. Harris, I am confident from our many, many
discussions that she did not intend such a meaning for that phrase. I am
sure as one may be, that Mrs. Harris intended and understood that the
phrase, "together with additions thereto and substitutions therefor" referred
to the acquisition or replacement of personal property then owned by the
camp, as itemized on page four of the "Stipulation of Ownership" signed on
the same date as the will. We carefully reviewed her will on more than one
occasion before she executed it, and I was, and am, confident that we
agreed on its meaning.  
          From these affidavits, it is apparent that, at the time of the execution of her will,
Beverly did not contemplate the sale of Shady Glade, and the "substitution" for Shady
Glade was not intended to encompass proceeds from its possible future sale. It is
apparent that Beverly's intent in devising Shady Glade to her two sons was to exclude
Richard only from control over the management and operations of Shady Glade, the
business. It was not her intent to exclude Richard and her daughter, Bebe, from all
possible benefits of the property, including any future proceeds from its sale. 
          We reverse the trial court's determinations that the will was not ambiguous and 
provided an intent contrary to ademption. The devise was ambiguous as to the proceeds
from the sale of Shady Glade, and the extrinsic evidence establishes that a sale was not
contemplated by Beverly when she executed the will. Because the extrinsic evidence
establishes that an intention contrary to ademption was not expressed, we find that the
devise of Shady Glade was adeemed at her death and that the proceeds from its sale
owing at that time passed pursuant to the residuary clause of the will.
           We, therefore, reverse the trial court's order granting summary judgment for Libby,
and for Bebe, as trustee for Cy Rickey, and render summary judgment for Dallas, as
independent executor of Beverly's estate. 



                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      May 12, 2004
Date Decided:         June 8, 2004