

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00573-CV

_____

IN THE INTEREST OF A.Z., A CHILD

On Appeal from the 325th District Court
Tarrant County, Texas
Trial Court No. 325-758208-24

Before Sudderth, C.J.; Kerr and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

At the conclusion of the suit affecting the parent–child relationship (SAPCR) brought by Appellee G.E. (Mother), the trial court terminated Appellant J.Z.'s (Father) parental rights to A.Z. (Aurora).[1] In three issues, Father, a pro se inmate,[2] argues that the trial court did not have personal jurisdiction over the parties, that he was deprived of his right to access the courts, and that the trial court should have granted his motion for new trial. We will affirm.

## Background

In her suit to terminate Father's parental rights to Aurora, Mother alleged that Father had endangered Aurora; that he had failed to support Aurora in accordance

---

[1]We use pseudonyms for the child, for both parents, and for persons connected to Mother or Father by whom the child could be identified. *See* Tex. R. App. P. 9.8(b).

[2]Pro se litigants are held to the same standards as licensed attorneys. *See Wheeler v. Green*, 157 S.W.3d 439, 444 (Tex. 2005) (explaining that the judicial system cannot have two sets of rules—a strict set for attorneys and a lenient set for pro se parties); *Hale v. Hale*, No. 02-23-00234-CV, 2024 WL 4510195, at *11 & n.11 (Tex. App.—Fort Worth Oct. 17, 2024, pet. denied) (mem. op.) (explaining that pro se litigants are required to comply with applicable laws and rules of procedure because to do otherwise would give pro se litigants an unfair advantage).

Upon Father's request, we abated this ultra-accelerated appeal, *see* Tex. R. Jud. Admin. 6.2(a), for the trial court to hear Father's motion for appellate counsel in this private termination-of-parental-rights lawsuit. *See* Tex. Fam. Code Ann. § 107.021 (providing for discretionary appointment of counsel based on the child's interests in suits other than those filed by a governmental entity). The trial court denied the motion for appellate counsel, stating, "Movant Father presented no argument, testimony, or evidence that the court, by any stretch of discretion, should appoint him appellate counsel" under Section 107.021. Mother is also pro se on appeal and has not filed an appellee's brief.

with his ability during a period of one year ending within six months of the date of the petition's filing; that he had been convicted of or placed on community supervision for being criminally responsible for the death or serious injury of a child under Penal Code Section 22.011(a); and that he had been adjudicated under Texas Family Code Title 3 for conduct that caused serious injury to a child and that would constitute a violation of Penal Code Section 22.011(a)(2). *See* Tex. Fam. Code Ann. §§ 161.001(b)(1)(E), (F), (L); *see also* Tex. Penal Code Ann. § 22.011(a)(2) (sexual assault).

Father, who was incarcerated for sexual assault of a child, filed a "general denial to all claim[s] sought by [Mother]" and a subsequent amended answer. The matter was set for trial at 11 a.m. on June 18, 2025, and on April 24, 2025, the trial court issued a notice of the hearing that included a telephone number for the bailiff and stated that Father could appear by telephone at that number. Father does not dispute that this notice was sent to him or that he received it, and he filed no objections to its instructions.

Nine days before the hearing, however, Father mailed a "Request to Appear via Telephone" in which he asked the trial court to direct its staff to contact his prison

3

unit "so [that] he [could] be made available on the set scheduled date." The trial court clerk did not receive the request until after the hearing.[3]

At the start of the hearing, the trial court took "judicial notice of the letter noticing the Respondent Father of the final trial date which was served by certified mail upon him mailed on April 24th of 2025, and the return receipt was file stamped with the court today for the date of delivery of May 2nd of 2025." The court further took notice that "per the court's policy," Father had been provided in the letter "with a phone number to the courtroom to the bailiff to call in," that it was twenty-one minutes past the time set for trial, that "the court's bailiff ha[d] not received a phone call," and that the bailiff had called into the hall for Father "and there ha[d] been no response." Thus, the trial proceeded without him.

Mother called several witnesses, starting with Father's cousin (Cousin). Cousin testified that in 2015, when she was fifteen, Father had sexually assaulted her and that Father had been convicted of the offense. The trial court admitted the judgment of conviction; the judgment reflects that Father had pled guilty. Cousin testified that although the assault happened when she was fifteen, Father had been inappropriate with her since she was six years old by making sexual jokes and showing her pictures of his genitals. Cousin did not make an outcry right away but reported the incident

---

[3]The record contains two copies of Father's request, both of which bear a certificate of service stating that he mailed them on June 9, 2025. One is file-stamped June 18, 2025, at 3:09 p.m. The other is file-stamped June 25, 2025, at 4:39 p.m.

when she became aware that he had also sexually assaulted her ten-year-old cousin. By the time she reported it, Mother and Father had already divorced.

Father's stepdaughter (Stepdaughter)—Mother's other daughter—also testified. Stepdaughter testified that Father was "inappropriate" with her starting when she was about six years old, "all the way up 'til 14." Specifically, he had engaged in "[i]nappropriate[ ] touching," including of her breasts. She did not report it to Mother because she did not want Aurora to grow up with divorced parents.

Mother also testified. Mother had divorced Father when Aurora was four years old, and Father was incarcerated about three years later. She filed her termination petition because she believed that Father was a pedophile and that her daughter was around the age when Father had begun acting inappropriately with his relatives. She asserted that Father would be eligible for parole "in the near future" and that she was afraid that Father would want to exercise visitation with Aurora.

Mother further testified that before Father went to prison, he had endangered Aurora by using drugs around her and that he had taken her with him when he purchased drugs. Mother also testified about her ability to support Aurora and Father's failure to provide support.

At the conclusion of testimony, the trial court found Mother to be credible and that she had shown by a preponderance of the evidence that Father had a substance-abuse issue, but it further found that the substance-abuse testimony did not rise to the level of clear and convincing evidence. The trial court therefore declined to

find the endangerment ground in Subsection (E) of Family Code Section 161.001(b)(1). *See* Tex. Fam. Code Ann. § 161.001(b)(1)(E).

However, the trial court found by clear and convincing evidence the predicate termination grounds in Subsections (F) and (L). *See id.* § 161.001(b)(1)(F) (providing for termination based on failure to support within required time frame), (L) (providing for termination based on criminal responsibility for the death or serious injury of a child under, among other Penal Code sections, Section 22.011). The court expressly found that Father had a "pattern of sexual assaults of [sic] behavior on children as young as six years old through the teenage years" and that it was not in Aurora's best interest for him to retain his parental rights. The trial court observed, "In fact, it would be emotionally harmful for the child to be parented by someone" who engaged in such behaviors. The trial court signed a default judgment finding the termination grounds in Subsections (F) and (L), finding that termination was in Aurora's best interest, and terminating Father's parental rights.

Father filed a motion for new trial raising the following grounds:

(1) the trial court's "denial to allow [Father] to appear and be heard via telephone violated his constitutional right to access to court";

(2) Mother made false allegations that Father "has a pattern of sexually assaulting children as young as six years old" and "had touched his daughter in an inappropriate and unlawful manner"; and

(3) the trial court did not have jurisdiction over Mother, Father, and Aurora because Mother and Father are noncitizens.

6

Father's motion further asserted that a new trial would not cause delay or cause prejudice to Mother "because the relief sought is merely a name change to exclude [Father's] name from the child's name" and because terminating his relationship with Aurora "would cause emotional distress and more as the child wonders why she cannot see her father."

The trial court denied his motion, and Father now appeals.

## Discussion

### I. Father's issues and motion-for-new-trial standard

As in his motion for new trial, Father argues in his first issue that the trial court lacked jurisdiction over him, Mother, and Aurora because he and Mother are not citizens of this country and asserts in his second issue that he was deprived of his right to access the court, relying on his request to appear remotely that was not received by the court until after the hearing. Father argues in his third issue that the trial court abused its discretion by denying his motion for new trial, repeating his first and second issues' arguments and contending that the testimony against him was false.[4] He also argues that the trial court should have held a hearing on his motion "to develop facts regarding [his] motion to appear."

---

[4] We construe Father's false-testimony argument as a challenge to the sufficiency of the evidence to support the termination. *See El Paso Nat. Gas Co. v. Minco Oil & Gas, Inc.*, 8 S.W.3d 309, 316 (Tex. 1999) ("[W]e liberally construe issues presented to obtain a just, fair, and equitable adjudication of the rights of the litigants.").

We consider together the parts of Father's issues that overlap and will start with his jurisdictional arguments, then his sufficiency arguments, and finally his access-to-courts issue.

Father's brief does not discuss the standard for granting a new-trial motion after a post-answer default judgment, *see* Tex. R. App. P. 38.1(i), but we are bound by it. Under that standard, a trial court abuses its discretion by denying a motion for new trial when the defaulting party shows that "(1) the failure to appear was not intentional or the result of conscious indifference, but was the result of an accident or mistake, (2) the motion for new trial sets up a meritorious defense, and (3) granting the motion will occasion no delay or otherwise injure the plaintiff." *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 925–26 (Tex. 2009).

## II. Jurisdiction

Because personal jurisdiction is a vital component of a valid judgment, we begin with Father's first issue and the part of his third issue challenging the denial of his new-trial ground asserting the trial court's lack of personal jurisdiction over the parties. *See In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012). However, the requirement that a trial court have personal jurisdiction is waivable, and a litigant may give express or implied consent to the court's personal jurisdiction. *Glob. Paragon Dall., LLC v. SBM Realty, LLC*, 448 S.W.3d 607, 611 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see also In re Guardianship of Fairley*, 650 S.W.3d 372, 386 (Tex. 2022) (citing Tex. R. Civ. P. 120).

Even if Father could complain about personal jurisdiction over another party, Mother and Father both voluntarily submitted to the trial court's jurisdiction—Mother by filing the petition, and Father by making a general appearance—and Mother resides in Texas with Aurora. *See* Tex. Fam. Code Ann. § 102.011 (providing that trial court has jurisdiction over nonresident who submits to jurisdiction of this state by entering general appearance or if the person resided with the child in this state); *Exito Elecs. Co. v. Trejo*, 142 S.W.3d 302, 305 (Tex. 2004) (noting party waives personal jurisdiction challenge by entering general appearance or seeking affirmative relief from the court); *McClelland v. E. Tex. Prof'l Credit Union*, No. 12-24-00302-CV, 2025 WL 1702289, at *2 (Tex. App.—Tyler June 17, 2025, no pet.) (mem. op.) (noting that party submits itself to trial court's authority by filing answer); *J.O. v. Tex. Dep't of Fam. & Protective Servs.*, 604 S.W.3d 182, 188–90 (Tex. App.—Austin 2020, no pet.) (holding trial court obtained personal jurisdiction over father, who was a foreign national, when he entered a general appearance).

Further, Father does not dispute that Aurora was born in and lives in Texas.[5] *See* Tex. Fam. Code Ann. §§ 152.201 (providing that a Texas court has jurisdiction to make child custody determination if it is the child's home state), 102.011(a) (noting that in SAPCRs, trial court has jurisdiction as provided by Chapter 152).

---

[5]Mother also submitted some evidence that she lives in Texas.

We overrule Father's first issue. Further, because Father's jurisdictional complaint did not present a meritorious defense, we overrule the part of Father's third issue complaining of the denial of his new-trial motion on jurisdictional grounds.

## III. Sufficiency

We next turn to Father's third issue broadly challenging the denial of his motion for new trial and reasserting his new-trial grounds also raised in his first and second issues. Thus, under this issue, we review the motion-for-new-trial ground not also raised under other issues: that the evidence regarding his sexual abuse of children was false. We also address the related argument raised in his motion and again on appeal that terminating his parental rights would cause emotional distress to Aurora. We construe Father's argument as an assertion that insufficient evidence supported termination based on Mother's allegations of sexual abuse. *See El Paso Nat. Gas Co.*, 8 S.W.3d at 316 (noting that appellate courts liberally construe issues).[6]

---

[6]Because the trial court did not terminate Father's parental rights based on endangerment, we need not address the sufficiency of the evidence to support that ground. *See In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019) (requiring review of Subsection (D) or (E) findings when parental rights are terminated based on those subsections). Father also has not challenged the Subsection (F) ground found by the trial court, and thus we do not have to consider Father's challenge to the Subsection (L) ground. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) ("Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest."). Nevertheless, we review the challenged ground in the interest of justice. *See In re C.S.*, No. 09-06-211-CV, 2007 WL 685630, at *3 (Tex. App.—Beaumont Mar. 8, 2007, no pet.) (mem. op.).

For a trial court to terminate a parent–child relationship, the party seeking termination must prove two elements by clear and convincing evidence: (1) that the parent's actions satisfy one ground listed in Family Code Section 161.001(b)(1); and (2) that termination is in the child's best interest. Tex. Fam. Code Ann. § 161.001(b); *In re Z.N.*, 602 S.W.3d 541, 545 (Tex. 2020).

First, Father complained under this issue and in his motion for new trial that the allegation that he had sexually abused Aurora was false. However, Mother did not allege or put on evidence that he had sexually abused Aurora, and the trial court made no finding that he had.

Second, as for Father's challenge to other abuse allegations, Father's brief discusses in his statement of facts the testimony from Cousin and Stepdaughter, and he argues under this issue that "the testimony regarding sexual behaviors toward children as young as 6 years of age is false." However, he pled guilty to and has been convicted of sexual assault of a child.[7] Thus, the trial court had sufficient evidence from which it could find the termination ground in Subsection (L). *See* Tex. Fam. Code Ann. § 161.001(b)(1)(L) (providing for termination when parent has been convicted for being criminally responsible for the serious injury of a child under Penal

---

[7]Father discounts this conviction. He does not dispute that he pled guilty to sexual assault, but he claims that "the alleged victim of that offense was 17 years of age when that incident occurred." Not only does this contradict Cousin's testimony, but the statute under which he was convicted defines "child" as someone under the age of seventeen. *See* Tex. Penal Code Ann. § 22.011(c)(1).

Code Section 22.011); *Z.N.*, 602 S.W.3d at 548 (holding that conviction for indecency with a child under Penal Code Section 21.11 can support a finding that a child was seriously injured for purposes of Subsection (L) because, among other reasons, sexual activity with a child "is always accompanied by a possibility of important or dangerous consequences, including emotional or psychological hurt" (citation omitted)); *In re A.S.*, No. 02-24-00072-CV, 2024 WL 2760529, at *5 (Tex. App.—Fort Worth May 30, 2024, no pet.) (mem. op.) (applying *Z.N.* in case in which father had been convicted of sexually assaulting his stepchild).

Further, the trial court could consider Father's conviction in its best-interest analysis. *A.S.*, 2024 WL 2760529, at *8–9 (holding that best-interest finding was supported by evidence that father had sexually assaulted his stepdaughter). The conviction alone supported the trial court's best-interest finding. *See id.* Moreover, the trial court as factfinder was entitled to find Cousin and Stepdaughter to be credible, *see White v. Ector Cnty. Appraisal Dist.*, No. 11-17-00059-CV, 2017 WL 6395500, at *1 (Tex. App.—Eastland Dec. 14, 2017, pet. denied) (per curiam) (noting that in bench trial, trial court is sole judge of witnesses' credibility), and thus the trial court could further find that Father not only committed sexual abuse against a child relative but also had sexual contact with a child under his care. *See* Tex. Penal Code Ann. § 21.11(a), (c) (defining sexual contact). That testimony provided further support to the trial court's best-interest finding.

In summary, the trial court had clear and convincing evidence from which it could find a predicate ground for terminating Father's parental rights to Aurora and that termination of Father's parental rights was in Aurora's best interest. *See A.S.*, 2024 WL 2760529, at *8–9; *see also Z.N.*, 602 S.W.3d at 545 (setting out standard for legal sufficiency); *In re A.B.*, 437 S.W.3d 498, 502–03 (Tex. 2014) (setting out standard for factual sufficiency and noting that we must give deference to the factfinder's findings). We overrule the part of Father's third issue challenging the denial of his new-trial motion on the basis of sufficiency of the evidence.

### IV. Access to courts

Finally, Father asserts in his second issue that he was deprived of his right of access to the court. We consider this issue with the part of his third issue challenging the denial of this ground in his motion for new trial.

Because a litigant cannot be denied access to the courts simply because he or she is an inmate, a trial court cannot bar an inmate from proceeding by affidavit, deposition, telephone, or other effective means. *Boulden v. Boulden*, 133 S.W.3d 884, 886–87 (Tex. App.—Dallas 2004, no pet.). Thus, Father was entitled to appear by telephone or other effective means. *See In re D.D.J.*, 136 S.W.3d 305, 311 (Tex. App.— Fort Worth 2004, no pet.) (discussing *In re Z.L.T.*, 124 S.W.3d 163, 165 (Tex. 2003)).[8]

---

[8]In *Z.L.T.*, the supreme court observed that an inmate in a civil action does not have an automatic right to appear personally in court but does not automatically lose the right to access the courts by virtue of being incarcerated. 124 S.W.3d at 165–66.

The trial court provided a phone number for Father to call to participate, and Father does not deny that the notice was sent to and received by the prison. Father's request to appear by telephone in which he asked the trial court to direct its staff to contact prison staff was not received by the trial court until after the hearing. It did not mention the trial court's notice or explain why the trial court's instructions were insufficient to allow him to participate.

Father cites the mailbox rule as applicable to pro se inmates to argue that his request was deemed filed on the date on which he deposited the request in the prison mail.[9] *See* Tex. R. Civ. P. 5; *see also* Tex. R. App. P. 9.2(b) (providing that a document is considered timely filed if received within ten days after the filing deadline and was deposited in the mail on or before the last day for filing); *In re M.J.Y.*, No. 05-21-01143-CV, 2022 WL 620708, at *1 (Tex. App.—Dallas Mar. 3, 2022, no pet.) (mem. op.) (observing that as rule is applied to inmates, a filing is deemed filed as of the date that the prison authorities received the document for mailing). However, regardless of when his request was deemed filed as a legal construct, as a matter of fact, the trial court had no way to know about the request at the time of the hearing.

---

[9]In support of Father's new-trial motion, he attached an "Inmate Request to Official" in which he asked prison officials to confirm that on September 9, 2025, he had mailed a package containing his request to appear by telephone. In a section labeled "Disposition," someone had written, "[M]ailed 9-9-25." But that cannot be the date on which he mailed his request to appear at the June 18 hearing by telephone because the record reflects that the trial court received the request in June. Further, it conflicts with his unsworn declaration in his motion for new trial in which he stated that he deposited his request in the prison mail on June 9, 2025.

The trial court could not have erred by not granting a request that it had not received.[10] *See In re A.D.M.*, No. 11-19-00131-CV, 2019 WL 5078595, at *1 (Tex. App.—Eastland Oct. 10, 2019, no pet.) (mem. op.) (holding that trial court did not deprive inmate of access to court when inmate did not request to appear by telephone or other manner). Thus, the question becomes whether, once the issue was brought to the trial court's attention in Father's motion for new trial, the trial court abused its discretion by declining to grant a new trial on that basis. Under the limited and specific facts of this case, the answer to that question is "no."

Months before Father made his request, the trial court provided a method for him to participate in the hearing. In his brief and his new-trial motion, Father did not complain that there were any deficiencies in the trial court's notice. Based on Father's declaration attached to his motion for new trial, his complaint seemed to be that as an inmate, he could not "freely call numbers that have not been set up by the party seeking to correspond, which must be approved by [TDCJ] in advance." He expanded on that argument in replying to Mother's response to his motion. There, he argued that "[i]nmates confined in [TDCJ] are not allowed to make outgoing phone calls to anyone, which includes courts or their staff, without that party first registering their

_____

[10]Moreover, a party who objects to the trial court's required method of attendance must make the objection within a reasonable time after the party receives notice of the appearance. Tex. R. Civ. P. 21d. The letter with the telephone number was sent in April 2025. If Father's request was for the trial court to call the prison unit, rather than the other way around, he had to object within a reasonable time after receiving the notice.

15

phone to receive such by and through Securus Technologies." However, he directs us to no TDCJ policy requiring a trial court to register its phone number with a third-party entity before an inmate can participate in a court hearing at that number, and he attached no evidence to his new-trial motion to support this assertion.

Because the trial court did not abuse its discretion by denying the motion for new trial on the grounds raised in Father's motion, we need not decide whether granting a new trial would not have caused delay or prejudice. As for Father's argument that the trial court should have held a hearing on his new-trial motion, he does not explain why the trial court should have held a hearing, and he cites no authority to support an argument that a hearing was required in this case. *See* Tex. R. App. P. 38.1(i); *One Time Constr. Tex., LLC v. Snow*, No. 02-23-00033-CV, 2023 WL 5767365, at *7 (Tex. App.—Fort Worth Sept. 7, 2023, no pet.) (mem. op.) (stating that a hearing on a motion for new trial is generally not mandatory and noting circumstances under which a movant is entitled to a hearing). Further, he does not explain what evidence he would have presented at a hearing. We overrule Father's second issue and the part of his third issue arguing that the trial court should have granted a new trial on this basis.

## Conclusion

Having overruled Father's three issues, we affirm the trial court's judgment and overrule any pending motions as moot.

16

/s/ Mike Wallach
Mike Wallach
Justice

Delivered:  March 26, 2026